[No. B201245. Second Dist., Div. Four. Nov. 20, 2008.]

CONSUMER ADVOCACY GROUP, INC., Plaintiff and Appellant, v. EXXONMOBIL CORPORATION, Defendant and Respondent.

**COUNSEL**

Yeroushalmi & Associates, Reuben Yeroushalmi, Daniel D. Cho and Ben Yeroushalmi for Plaintiff and Appellant.

Hunton & Williams, Chris M. Amantea and James K. Kawahito for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—This appeal arises from a private enforcement action under an initiative measure, the Safe Drinking Water and Toxic Enforcement Act of 1986 (the Act), commonly referred to as "Proposition 65." The Act is codified in Health and Safety Code section 25249.5 et seq.[1] Plaintiff and appellant Consumer Advocacy Group, Inc. (CAG), appeals from the entry of summary judgment in favor of defendant and respondent ExxonMobil Corporation.[2] The trial court based its judgment on the doctrine of res judicata. Because the issues in this action are not identical to those resolved in the prior action, we conclude the trial court erred in granting full summary judgment based on res judicata. We reverse the judgment and remand the matter to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL SUMMARY

CAG is a private nonprofit organization. It describes its mission as protecting the public from, and educating the public about, harmful products and business practices. In order to promote its goals, CAG acts as a private enforcer of the Act, bringing lawsuits against businesses it believes to be in violation of sections 25249.5 and 25249.6. The statutory scheme allows enforcement actions to be brought by private persons acting in the public interest. (§ 25249.7, subd. (d).)

In January 1999, Consumer Cause, Inc., an organization CAG refers to as its predecessor, filed suit in Los Angeles Superior Court against several oil companies, including ExxonMobil, purportedly on behalf of the public. The complaint alleged that ExxonMobil violated the Act by knowingly and intentionally allowing benzene, toluene, and lead to leak into drinking water sources. The complaint included a list of California sites where this contamination allegedly occurred, and the relief requested was specific to these sites.

Shortly after the Consumer Cause complaint was filed, a similar complaint was filed in the San Francisco Superior Court by Communities for a Better Environment and Nicole McAdam (collectively, CBE), also purporting to act on behalf of the public. The CBE complaint also alleged that ExxonMobil

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] In the early stages of this litigation, respondent was identified as Mobil Corporation. Respondent now identifies itself as "ExxonMobil Corporation, the successor by merger to Mobil Corporation." Respondent's identity is not at issue in this appeal. The parties refer to respondent as ExxonMobil in their briefing, so we shall do the same.

violated the Act by knowingly and intentionally allowing benzene and toluene to leak into drinking water sources. The CBE complaint did not allege any violations based on leaks of lead. The CBE complaint's list of alleged contamination sites included some of the same sites listed in the CAG complaint (overlapping sites). In May 1999, the court directed CBE to amend its complaint to remove the overlapping sites. CBE complied with this order. In August 1999, Consumer Cause voluntarily dismissed its complaint. The same day, CAG filed an almost identical complaint against the same defendants, including ExxonMobil. The list of sites allegedly contaminated by ExxonMobil was similar to the list submitted by Consumer Cause. CAG filed this complaint in the San Francisco Superior Court; the case was transferred to the Los Angeles Superior Court in 2000.

CBE and ExxonMobil reached a tentative settlement agreement in 2003. In order to ensure uniform treatment of all its facilities, ExxonMobil agreed to the proposed settlement with the expectation that CBE would amend its complaint to include all alleged sites of contamination in California, including those being litigated by CAG. CBE was permitted to file an amended complaint adding all of the contested California sites. The Attorney General reviewed the terms of the settlement. The court approved the settlement in March 2004 and commented on the record that it believed the settlement to be beneficial to the people of California.

With respect to the CAG action, ExxonMobil filed a motion in November 2006 for summary judgment, or alternatively, summary adjudication on the issue of whether "CAG's prosecution of this action—an action which asserts the same claims as a virtually identical case already resolved by a settlement and final judgment entered in San Francisco Superior Court—is barred by the doctrine of *res judicata*." The trial court granted ExxonMobil's motion for full summary judgment, finding that all of the elements of res judicata were satisfied by the CBE settlement. CAG timely appeals from the ensuing judgment.

## DISCUSSION

CAG contends summary judgment in favor of ExxonMobil was erroneous for two reasons. First, CAG argues the settlement between CBE and ExxonMobil is invalid, at least as to the overlapping sites, because the San Francisco court lacked jurisdiction to approve the settlement. Second, CAG argues the elements necessary for application of res judicata were not satisfied as to its claims against ExxonMobil. "We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter

of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; see Code Civ. Proc., § 437c.)

## I

CAG claims, "The rule of exclusive concurrent jurisdiction precludes CBE from settling as to the sites covered by CAG's complaint." It declares it is "not attacking the settlement between [CBE and ExxonMobil]" and that it "does not ask this Court to overturn effectively the CBE settlement and judgment." But the essence of CAG's claim is that the San Francisco court lacked jurisdiction over the overlapping sites, and for that reason could not approve a settlement with regard to them.

■ " 'Under the rule of exclusive concurrent jurisdiction, "when two [California] superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved." ' " (*People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 769–770 [25 Cal.Rptr.2d 192].) "Jurisdiction" in this context refers to a mandatory procedural rule, not to authority over the subject matter or parties in a fundamental sense. (*Ibid.*; see also *County of Los Angeles v. Harco National Ins. Co.* (2006) 144 Cal.App.4th 656, 661–662 [50 Cal.Rptr.3d 573] [contrasting possible meanings of the term "jurisdiction"].)

The basis for CAG's claim is the 1999 order in the suit between CBE and ExxonMobil, directing CBE to delete the overlapping sites. ExxonMobil raised exclusive concurrent jurisdiction as an affirmative defense in its demurrer to CBE's first amended complaint. It argued the Los Angeles court had exclusive jurisdiction and asked that the San Francisco court either sustain its demurrer or stay the CBE action until the CAG suit was resolved. The San Francisco court overruled ExxonMobil's demurrer, but ordered CBE to amend its complaint to remove all overlapping sites. The court reasoned that the CBE action was not barred by the doctrine of exclusive concurrent jurisdiction as long as the sites being litigated in the two actions did not overlap. CAG now relies on this ruling as evidence that, had the overlapping sites not been amended out of CBE's complaint, CBE's suit would have been barred by the doctrine of exclusive concurrent jurisdiction. Thus, according to CAG, when the CBE complaint was later amended to add the overlapping sites in accordance with the settlement agreement, CBE was in violation of the earlier order and the San Francisco court was acting in excess of its jurisdiction.

CAG's argument is dependent on its implicit assumption that a court may not modify an earlier ruling. In its briefs, CAG accuses CBE and ExxonMobil of violating a court order by reaching a settlement that included the overlapping sites. This accusation ignores the fact that the San Francisco court approved the settlement agreement that included the overlapping sites. The San Francisco court also allowed CBE to amend its complaint to include the overlapping sites once the settlement agreement was reached. These actions, undertaken with the approval of the court, were not violations of a court order.

Because the Los Angeles court assumed jurisdiction over claims concerning the overlapping sites first, CAG asserts that the San Francisco court lacked the authority to subsequently assume jurisdiction and approve the settlement. This assertion reflects a misunderstanding of the doctrine of exclusive concurrent jurisdiction. "The rule of exclusive concurrent jurisdiction is not 'jurisdictional' in the sense that failure to comply renders subsequent proceedings void." (*People ex rel. Garamendi v. American Autoplan, Inc., supra,* 20 Cal.App.4th at p. 772.) "The rule is established and enforced not 'so much to protect the rights of parties as to protect the rights of Courts of co-ordinate jurisdiction to avoid conflict of jurisdiction, confusion and delay in the administration of justice.' " (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 787 [274 Cal.Rptr. 147].) Furthermore, when a court has fundamental jurisdiction over the subject matter and parties, but acts in excess of a jurisdictional rule, its judgment should be challenged directly and is generally not subject to collateral attack. (*County of Los Angeles v. Harco National Ins. Co., supra,* 144 Cal.App.4th at p. 662.) CAG's argument invites this court to perform collateral review of the decision of the San Francisco court. We decline to do so. The final judgment in the lawsuit between CBE and ExxonMobil is beyond the scope of the appeal before this court.

## II

■ " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].) "A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' " (*Id.* at p. 897, italics omitted.)

■ As a preliminary matter, CAG contends that the CBE settlement cannot have preclusive effect on the CAG suit under the res judicata doctrine. The reason, it argues, is that "a subsequent action cannot bar a prior action."

While this is generally true, CAG incorrectly assumes that the determination of which action is prior and which is subsequent is based on the order in which the suits were filed. " ' "Where two actions involving the same issue are pending at the same time, it is not the final judgment in the first suit, but *the first final judgment*, although it may be rendered in the second suit, that renders the issue *res judicata* in the other court." ' " (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 977 [104 Cal.Rptr. 42, 500 P.2d 1386]; see also 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 366, p. 989.) When two successive actions dealing with the same controversy are filed in courts of concurrent jurisdiction and the exclusive jurisdiction of the first court is not invoked before a final judgment is reached in either case, " 'the priority of jurisdiction loses its significance; *the first final judgment* becomes conclusive, even though it is rendered in the action which was filed later in time.' " (*Busick, supra*, 7 Cal.3d at p. 977.) The San Francisco court's judgment approving the CBE settlement became final while CAG's action in the Los Angeles court was still pending. Thus, the CBE suit was the first to reach a final judgment.

CAG also asserts that settlements in cases brought by private enforcers under Proposition 65 lack res judicata effect on future private enforcement actions. The contrary is true. The application of res judicata to one private enforcer based on a settlement reached by another may present due process concerns under certain circumstances. As long as the requirements of due process are met, however, there are strong indications that the Legislature intended res judicata principles to apply to citizen suits brought pursuant to Proposition 65. In 2001, it amended the Act to add a number of new provisions. (Legis. Counsel's Dig., Sen. Bill No. 471 (2001–2002 Reg. Sess.) Stats. 2001, ch. 578.) These provisions included section 25249.7, subdivision (f)(6), which now provides: "Neither this subdivision nor the procedures provided in subdivision (e) and subdivisions (g) to (j), inclusive, shall affect the requirements imposed by statute or a court decision in existence on January 1, 2002, concerning whether claims raised by any person or public prosecutor not a party to the action are precluded by a settlement approved by the court." We have examined the legislative history of this amendment and given the parties an opportunity to do so as well. While we did not find legislative history speaking specifically to subdivision (f)(6), the larger context of the 2001 amendments is instructive. The Legislature recognized that the private enforcement mechanism of Proposition 65 had led to a number of frivolous lawsuits and collusive settlements. (Sen. Rules Com., Off. of Sen. Floor Analysis, Rep. on Sen. Bill No. 471 (2001–2002 Reg. Sess.) Sept. 26, 2001.) The purpose of the 2001 amendments was to "address[] abusive actions brought by private persons containing little or no supporting evidence by barring such actions from proceeding, or shifting the burden of proof provided by the statute." (Sen. Rules Com., Off. of Sen. Floor Analysis,

Rep. on Sen. Bill No. 471 (2001–2002 Reg. Sess.) Sept. 26, 2001, p. 2.) Allowing defendants to assert claim preclusion as a defense in appropriate cases is consistent with the Legislature's desire to minimize frivolous and duplicative lawsuits by private enforcers.

■ CAG argues that allowing a settlement by one private enforcer to preclude claims by a different private enforcer will encourage collusive settlements. The Legislature has expressed concern about such settlements, in which a defendant attempts to insulate itself against future litigation by entering into a comprehensive settlement with a private enforcer on terms that enrich the private enforcer but do little to benefit the public. (Sen. Rules Com., Off. of Sen. Floor Analysis, Rep. on Sen. Bill No. 471 (2001–2002 Reg. Sess.) Sept. 26, 2001.) In response to this concern, the Legislature did not strip Proposition 65 settlements of preclusive effect, but instead increased oversight of settlements involving private enforcers. The 2001 amendments included the addition of section 25249.7, subdivision (f)(4), which mandates court review and factual findings before approval of any settlement in a private enforcement action, and subdivision (f)(5), which requires that these settlements be submitted to the Attorney General, who may then participate in the settlement approval process.[3] (Legis. Counsel's Dig., Sen. Bill No. 471 (2001–2002 Reg. Sess.) Stats. 2001, ch. 578.) At oral argument, CAG questioned whether oversight by a court and the Attorney General is sufficient to prevent collusive settlements, particularly if third parties who will be affected by the settlement are not given notice and an opportunity to intervene. This is a concern the Legislature is best suited to address, given the statutory scheme it has enacted. Accordingly, we conclude claim preclusion applies to private enforcement actions, as long as due process and the traditional elements of res judicata are satisfied.

■ We turn to the merits of CAG's contention that the trial court incorrectly found the elements of res judicata to be satisfied by the CBE settlement. Our review is de novo since the issue is a question of law. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 [73 Cal.Rptr.3d 3].) A prior judgment is not res judicata on a subsequent action unless three elements are satisfied:

---

[3] "(4) If there is a settlement of an action brought by a person in the public interest under subdivision (d), the plaintiff shall submit the settlement, other than a voluntary dismissal in which no consideration is received from the defendant, to the court for approval upon noticed motion, and the court may approve the settlement only if the court makes all of the following findings: [¶] (A) Any warning that is required by the settlement complies with this chapter. [¶] (B) Any award of attorney's fees is reasonable under California law. [¶] (C) Any penalty amount is reasonable based on the criteria set forth in paragraph (2) of subdivision (b).

"(5) The plaintiff subject to paragraph (4) has the burden of producing evidence sufficient to sustain each required finding. The plaintiff shall serve the motion and all supporting papers on the Attorney General, who may appear and participate in any proceeding without intervening in the case." (§ 25249.7, subd. (f)(4), (5).)

"1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. [Citation.] Even if these threshold requirements are established, res judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 [71 Cal.Rptr.2d 77] (*Citizens for Open Access*).) CAG contends that the CBE settlement satisfies none of these elements, and that even if it did, injustice would result from the application of res judicata.

### A

█ CAG asserts that the issues decided by the CBE settlement differ from those presented in the present action. "Unless the issue or cause of action in the two actions is identical, the first judgment does not stand as a bar to the second suit. [Citations.] To define a cause of action, California follows the primary right theory." (*Citizens for Open Access, supra,* 60 Cal.App.4th at p. 1067.) The primary right theory " 'provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.' " (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 904.) The primary right at issue must be " 'distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation.] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' " (*Ibid.*)

CAG first seeks to distinguish the primary right in this case by arguing that "[t]he CAG action included 63 sites of violations distinct from those cited in the CBE action." This assertion is premised on CBE's settlement having been invalid as to the overlapping sites. As we explained in our discussion of exclusive concurrent jurisdiction, this court does not intend to perform a collateral review of the final judgment in the suit between CBE and

ExxonMobil.[4] In any event, " '[a]n erroneous judgment is as conclusive as a correct one' " for the purpose of claim preclusion. (*Busick v. Workmen's Comp. Appeals Bd.*, *supra*, 7 Cal.3d at p. 975.) The settlement approved by the San Francisco court resolved CBE's claims as to all of the sites in CBE's eighth amended complaint. CAG admits that CBE's final complaint incorporated all of the sites at issue in the CAG action. We conclude that the primary right at issue in this case cannot be distinguished from the primary right at issue in the CBE action on the basis of the sites being litigated.

■ CAG next tries to distinguish the primary right in this case by arguing that its claim covers a period of time not covered by the CBE action because CAG sued over the overlapping sites earlier than CBE. The overlapping sites were amended into CBE's complaint in 2003, while they appeared in CAG's complaint as early as 1999. Thus, CAG argues that the statute of limitations on its complaint allows it to litigate violations going back years further than CBE. Because the Act allows penalties to be calculated on a daily basis, CAG contends that the primary right is related to when the statute of limitations expires. CAG acknowledges that ExxonMobil waived its statute of limitations defense as part of the settlement with CBE, but argues we should disregard this waiver as contrary to public policy. CAG frames the issue as though ExxonMobil "ignore[d] the law." This is a mischaracterization of the role of the statute of limitations, an affirmative defense which a defendant may opt to raise or waive. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 962, p. 375.) CAG's attempt to show ExxonMobil's waiver harms the public also fails. CAG offers generalizations about the purpose of Proposition 65 and the role of private enforcers, but does not demonstrate that it is inconsistent with the goals of Proposition 65 to allow a settlement to encompass more violations than could be redressed if the statute of limitations was raised. We find no basis to conclude that ExxonMobil's waiver of the statute of limitations is contrary to public policy. Since the CAG and CBE claims are not distinguishable on the basis of time covered, we need not reach the question whether the application of the statute of limitations, if not waived, would have affected the primary rights at issue.

---

[4] In addition to its argument based on exclusive concurrent jurisdiction, CAG also argues that the settlement is invalid as to the overlapping sites because CBE's intent to sue notices for those sites did not comply with the requirements of Proposition 65. The notice requirements under Proposition 65 are intended to give notice to potential defendants, as well as giving public prosecutors such as the Attorney General the opportunity to file suit themselves. (§ 25249.7, subd. (d)(1).) CAG is neither a defendant nor a public prosecutor and is not entitled to notice under this provision. Thus, even if the Proposition 65 notice requirements were violated, a question on which we express no opinion, CAG has not shown that it has standing to complain of the violation. These questions should have been raised before the judgment in the CBE action became final; we decline to address them on collateral review.

Finally, CAG distinguishes the primary right at issue by pointing out that its complaint alleged violations based on benzene, toluene, and lead, while CBE's complaint and settlement concerned benzene and toluene, but not lead. ExxonMobil responds by asserting that the primary right at issue is the leaking of petroleum products into water sources, rather than the leaking of any particular gasoline constituent. But the settlement is specific in covering only benzene and toluene; it does not contain language permitting a broader application. In the section titled "Claims Covered," the settlement agreement states: "This Settlement Agreement is a final and binding resolution between the Plaintiffs and ExxonMobil of the following causes of action: [¶] . . . Any and all Proposition 65 claims that could have been asserted in this action arising out of any alleged discharge or release of *benzene and/or toluene* . . . including, without limitation, all claims with respect to the continued presence or migration of such *benzene and/or toluene* in soil or water; [¶] . . . Any and all Unfair Competition Act claims pursuant to Proposition 65 that could have been asserted in this action arising out of any alleged discharge or release of *benzene and/or toluene* . . . including, without limitation, all claims with respect to the continued presence or migration of such *benzene and/or toluene* in soil or water; and [¶] . . . Any and all Unfair Competition Act claims pursuant to Fish and Game Code section 5650 that could have been asserted in this action arising out of any alleged discharge or release of *benzene and/or toluene* . . . including, without limitation, all claims with respect to the continued presence or migration of such *benzene and/or toluene* in soil or water." (Italics added.)

ExxonMobil argues, "[T]he Settlement Agreement in the CBE Action specifically encompasses the release of all gasoline constituents, which includes lead." It cites to paragraph No. 5.4.5 of the agreement to support this argument. In fact, paragraph No. 5.4.5 of the settlement agreement is a general commitment to perform corrective action as required by law in cooperation with the appropriate regulatory agencies.[5] This general language, read in conjunction with the agreement's description of claims covered, does not specifically encompass "all gasoline constituents." We are not persuaded

---

[5] In pertinent part, paragraph No. 5.4.5 of the settlement agreement provides, "At service station sites in California where ExxonMobil has responsibility for and performs corrective action, ExxonMobil will perform such corrective action consistent with Chapter 6.7 and Chapter 6.75 of the California Health and Safety Code and Sections 2720–2728 of Article 11, of Title 23 of the California Code of Regulations and any different or more stringent requirement as authorized by Section 25299.2(a) of the California Health and Safety Code. In performing corrective action consistent with Chapter 6.7 and Chapter 6.75 of the California Health and Safety Code and Sections 2720–2728 of Article 11, of Title 23 of the California Code of Regulations and any different or more stringent requirement as authorized by Section 25299.2(a) of the California Health and Safety Code, ExxonMobil will work with the Appropriate Regulatory Agency." (Fn. omitted.) The remainder of paragraph No. 5.4.5 of the agreement defines "Appropriate Regulatory Agency."

by ExxonMobil's related argument that corrective action taken to address benzene and toluene contamination will necessarily address lead contamination, if any exists. Whether or not this is an accurate assessment, it is not supported by the record before us. Rather, it presents a question of fact for the trial court. ExxonMobil further claims that "the use of leaded gasoline was phased out in the 1970's (well outside the statute of limitations for either suit) and is no longer a significant component of gasoline." This, too, is a question of fact for the trial court. No findings regarding lead appear in the record.

ExxonMobil argues that if we find CAG's claim regarding lead is not barred by res judicata, we open the door for a plaintiff to "effectively undermine any settlement agreement under Proposition 65 by simply alleging the additional existence of one of the more than 700 chemicals comprising the list of toxins that was not specifically delineated in the pleadings of a case." To the contrary, we are not holding that a single settlement agreement cannot resolve claims relating to all gasoline constituents. Instead, we conclude that this settlement does not do so.

While ExxonMobil is not entitled to full summary judgment or to summary adjudication that CAG's entire action is barred by res judicata, this is only because the CBE action did not resolve claims relating to lead. As we shall explain for the guidance of the trial court, the other elements of res judicata are satisfied.

**B**

CAG argues that res judicata does not preclude its claim because it was not a party to the CBE settlement, nor in privity with CBE. In order for res judicata to apply, the party against whom the defense is asserted must have been "a party or was in privity with a party to the prior adjudication." (*Citizens for Open Access, supra*, 60 Cal.App.4th at p. 1065.)

In the context of a res judicata determination, privity " 'refers "to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." ' " (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90–91 [38 Cal.Rptr.3d 528].) " '[T]he determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate. [Citation.] " 'Whether someone is in privity with the actual parties requires close

examination of the circumstances of each case.' " ' " (*Id.* at p. 91.) "This requirement of identity of parties or privity is a requirement of due process of law." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].)

CAG was not a party to the settlement between ExxonMobil and CBE. Nevertheless, ExxonMobil argues that CAG and CBE are in privity for the purpose of res judicata because both purport to be acting as enforcers of the public interest, on behalf of the people of California. In reaching this conclusion, ExxonMobil cites to *Citizens for Open Access, supra,* 60 Cal.App.4th 1053, which examined whether privity can exist between two unrelated parties when both purport to represent the public interest. The dispute concerned public access to privately owned beachfront land. (*Id.* at p. 1058.) The first suit was brought by various state agencies and the Attorney General and resulted in a settlement granting the public limited access to the disputed parcel. (*Id.* at pp. 1060–1061.) The second suit was brought by a nonprofit organization purporting to act on behalf of the public seeking similar, though not identical, relief. (*Id.* at p. 1062.) The court found the doctrine of res judicata imposed a bar to the second suit. (*Id.* at p. 1075.) With respect to the issue of privity, the court explained, "The members of appellant were also members, although unnamed, of the class of public citizens adequately represented by the state agencies in the [prior] actions. Appellant, even if not named or active as a party, would be bound by judgments in the same prior actions brought pursuant to statutory authority by a different *citizens* group acting in a representative capacity for the benefit of the public, or at least those members of it similarly situated, to determine the same matter of public interest. . . . Where, as here, authority to pursue public rights or interests in litigation has been given to a public entity by statute, a judgment rendered is res judicata as to all members of the class represented." (*Id.* at p. 1073.)

■ The doctrine of res judicata reflects a balancing of interests when applied in the context of the effect of litigation settlement. One the one hand, defendants who enter into a comprehensive settlement for the benefit of the public have an interest in finality and in being free from a series of additional suits from members of the public, the same class that was represented in the first suit. On the other hand, "[t]he opportunity to be heard is an essential requisite of due process of law" and the party bringing suit may not be deprived of this right. (*Richards v. Jefferson County* (1996) 517 U.S. 793, 797, fn. 4 [135 L.Ed.2d 76, 116 S.Ct. 1761] (*Richards*).)

The United States Supreme Court has expressed concern about "extreme applications of the doctrine of res judicata" that are "inconsistent with a federal right that is 'fundamental in character.' " (*Richards, supra,* 517 U.S. at

p. 797.) In *Richards*, the Alabama courts had concluded that a lawsuit challenging the constitutionality of a county tax brought by a city within the county and three taxpayers precluded a subsequent suit in which a class of employees subject to the tax raised similar claims. (*Id.* at pp. 795–796.) One of the reasons the Alabama Supreme Court gave for upholding this ruling was that the taxpayers in the first suit adequately represented the taxpayers in the second suit because their respective interests were " 'essentially identical.' " (*Id.* at p. 796.) The United States Supreme Court reversed, concluding that the application of res judicata against the second group of taxpayers deprived them of due process. (*Id.* at p. 797.) The court acknowledged that due process "[does] not always require one to have been a party to a judgment in order to be bound by it. Most notably, there is an exception when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment. . . . Moreover, although there are clearly constitutional limits on the 'privity' exception, the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term. See generally Restatement (Second) of Judgments, ch. 4 (1980) (Parties and Other Persons Affected by Judgments). [¶] . . . 'We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party.' " (*Id.* at p. 798.) The Alabama Supreme Court had concluded that the parties bringing the second suit were "adequately represented" by the first suit. (*Id.* at p. 799.) The United States Supreme Court disagreed.

One of the critical facts underlying the court's decision was the failure of the parties to the first suit to provide any notice to the parties who brought the second suit that a suit was pending that would conclusively resolve their legal rights. (*Richards, supra*, 517 U.S. at p. 799.) Other critical facts were that "the three county taxpayers who were parties in [the first suit] did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any county taxpayers who were nonparties." (*Id.* at p. 801.) On these facts, the court concluded, "[T]here is no reason to suppose that the [first suit's] court took care to protect the interests of petitioners in the manner suggested in [*Hansberry v. Lee* (1940) 311 U.S. 32 [85 L.Ed. 22, 61 S.Ct. 115]]. Nor is there any reason to suppose that the individual taxpayers in [the first suit] understood their suit to be on behalf of absent county taxpayers. Thus, to contend that the plaintiffs in [the first suit] somehow represented petitioners, let alone represented them in a constitutionally adequate manner, would be 'to attribute to them a power that it cannot be said that they had assumed to exercise.' [Citation.] [¶] Because petitioners and the [first suit's] litigants are best described as mere 'strangers' to one another, [citation], we are unable to conclude that the [first suit's] plaintiffs

provided representation sufficient to make up for the fact that petitioners neither participated in, [citation], nor had the opportunity to participate in, the [first] action. Accordingly, due process prevents the former from being bound by the latter's judgment." (*Id.* at p. 802.)

If privity exists in the present case, it would be due to "adequate representation" of CAG's interests by CBE. We consider the facts of our case in light of *Richards.* Some distinctions are apparent. CBE did sue on behalf of a class—the public—because it sued under the citizen enforcement provision of Proposition 65. CBE's pleadings purported to assert claims on behalf of nonparties, stating the action was on behalf of "[CBE's] over 20,000 members and the general public of California . . . as a private attorney general." The complaint explicitly stated that CBE was not suing in an individual capacity and was not claiming any individual injury "separate and apart from all other residents of the state." Because CBE considered itself to be suing in a representative capacity, the concerns that the *Richards* court expressed about whether care was taken to protect the interests of absent class members are diminished in this case. The settlement agreement states only that it is binding upon "the Plaintiffs and ExxonMobil, and ExxonMobil's successors and assigns." The agreement is silent as to its intended effect on nonparties. In the context of a case brought on behalf of the public, however, the settlement agreement's failure to mention the public as a party to be bound is not sufficient to show that CBE abandoned its intention to represent the interests of the general public. Furthermore, the settlement agreement itself involved remedial measures to be taken by ExxonMobil at alleged violation sites, not payments of penalties to CBE. This resolution of the suit, combined with CBE's stated intent to act as a private attorney general, indicates that CBE was representing the interests of the general public, not just its own interests. Thus, it appears that CBE provided constitutionally adequate representation of CAG's interests.

■■■ According to its complaint, CAG also "brings this action in the public interest." This is significant to the due process inquiry, not only because it supports our conclusion that CBE adequately represented CAG's interests, but also because it leads us to conclude that CAG does not have an individual property right in pursuing this action. The interest in suing in a representative capacity has been determined not to be a property right in the context of other types of actions. (See, e.g., *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 [46 Cal.Rptr.3d 57, 138 P.3d 207] [unfair competition suit]; *Hogan v. Ingold* (1952) 38 Cal.2d 802 [243 P.2d 1] [shareholder derivative suit]; *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223 [49 Cal.Rptr.3d 892] [class action].) CAG contends that it has an individual property right at stake in a Proposition 65 action because private enforcers are entitled to 25 percent of all penalties. (§ 25249.12, subd. (d).) To the contrary, the statutory framework governing a

Proposition 65 action affirms the representative nature of the individual's role. An individual may sue under the Act only in the public interest; there is no provision for an individual to sue on his or her own behalf. (§ 25249.7, subd. (d).) An individual must notify various public prosecutors at least 60 days before commencing the action, and may not bring the action if one of the public prosecutors commences and is prosecuting an action against the same violation before the individual's action is commenced. (§ 25249.7, subd. (d)(1), (2).) An individual must provide the Attorney General any settlement agreement being submitted for court approval, and the Attorney General may participate in court proceedings regarding approval. (§ 25249.7, subd. (f)(5).) Taken together, these provisions reveal a statutory scheme intended to create a mechanism for vindicating public rights. This purpose is not altered by the potential for an individual to share in any penalties recovered.

There remains a question about notice of the impending settlement between ExxonMobil and CBE. The *Richards* court made clear that lack of notice to any nonparties who will be bound raises questions about whether those parties are denied due process when res judicata is applied to preclude their claims. In this case, there appears to be a factual dispute as to whether CAG was given notice of CBE's impending settlement. ExxonMobil alleges actual notice was given to CAG, while CAG alleges it was not given notice. We note that the settlement agreement contains a confidentiality clause intended to restrict disclosure of the agreement until it became public through either the Attorney General or the court. The trial court did not make any findings regarding notice to CAG when granting summary judgment. Whether or not we should remand for resolution of this disputed fact depends on whether the fact in question is material. (See *Rodgers v. Sargent Controls & Aerospace*, *supra*, 136 Cal.App.4th at p. 88.) *Richards* assumed, without deciding, that adequate representation might cure a lack of notice. (*Richards*, *supra*, 517 U.S. at p. 801.) Ultimately, the court did not have to reach that question, because it found there was not adequate representation. (*Ibid.*) In this case, however, we find there was adequate representation of CAG's interests by CBE, and we find this representation cured any lack of notice. Thus, the factual dispute over whether CAG had notice is not material to the resolution of the case and does not provide a basis for reversing the grant of summary judgment.

We conclude that CAG is in privity with CBE for the purposes of res judicata. We further find that application of the privity doctrine to preclude CAG's claim does not violate CAG's due process rights under the circumstances of this case.

## C

█ CAG argues that the settlement between CBE and ExxonMobil is not a final judgment on the merits. A court-approved settlement acts as a final judgment on the merits for the purposes of res judicata. " ' "A judgment entered . . . by consent or stipulation, is as conclusive a . . . bar as a judgment rendered after trial." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 170, p. 3312 . . . .)' " (*Citizens for Open Access, supra,* 60 Cal.App.4th at p. 1065, citation omitted.) CAG does not dispute this basic principle, but argues that settlement without discovery lacks the factual basis to be a judgment on the merits. CAG cites no authority in support of this argument. █ " '[A]n appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." ' " (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 [35 Cal.Rptr.2d 574].) Accordingly, we consider this argument waived.

CAG's briefing on whether this case falls within the injustice or public interest exceptions to the doctrine of res judicata also lacks citation to legal authority. Other than citing the general principle that res judicata will not be applied " ' "if injustice would result or if the public interest requires that relitigation not be foreclosed" ' " (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257 [5 Cal.Rptr.2d 545, 825 P.2d 438]), CAG fails to reference any authority to support its argument that either of the exceptions applies in this case. Our Supreme Court has cautioned that "[t]he public interest exception is an extremely narrow one . . . it is the exception, not the rule, and is only to be applied in exceptional circumstances." (*Id.* at p. 259; see also *Slater v. Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593] [questioning the continued validity of the "injustice" exception].) CAG's argument fails to explain how the circumstances of this case are sufficiently exceptional to warrant the application of the exception. Neither does it compare the facts of this case to any other case in which the injustice or public interest exceptions were found to be appropriate. CAG argues that it could have, and would have, pushed for more extensive remedies to benefit the public than were agreed to in the CBE settlement, but it does not allege that the settlement was collusive or in bad faith on CBE's part. Nor does ExxonMobil's desire to reach a comprehensive settlement as to all of its California sites, rather than litigating them piecemeal, show bad faith on its part. CAG has not shown that injustice would result or that the public interest would be harmed if res judicata was applied to preclude its claim against ExxonMobil.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

Willhite, J., and Suzukawa, J., concurred.