Filed 7/25/23

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHOP WON PARK et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> KELLY NAZARI et al., <br><br> Defendants and Appellants. | B320483 <br><br> (Los Angeles County Super. Ct. No. 19STCV20545) |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed.

Law Offices of Yousef Monadjemi and Yousef Monadjemi; Raskin Gorham Anderson Law and Lucy Mekhael for Defendants and Appellants.

Spainhour Law Group and Kevin A. Spainhour for Plaintiffs and Respondents.

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, all but Part II.B of this opinion is certified for publication.

After obtaining a judgment against defendants Kelly Nazari (Kelly) and Shariar Nazari (Shariar)[1] (collectively, the Nazaris) in a prior case, plaintiffs Chop Won Park (Park) and Bonnie Nguyen (Nguyen) (collectively, plaintiffs) filed this action against the Nazaris, their attorney, and others for fraudulent transfer, quiet title, and declaratory relief.  The Nazaris filed a special motion to strike the entire complaint pursuant to the anti-SLAPP statute (Code Civ. Proc.,[2] § 425.16).  In this appeal from the denial of the Nazaris' motion, we principally consider whether the trial court erred in ruling the Nazaris failed to meet their initial burden of identifying all allegations of protected activity and the claims for relief supported by them.  We also consider whether the trial court's earlier order granting the Nazaris' attorney's anti-SLAPP motion compels the same outcome here.

## I.  BACKGROUND

*A.*    *Prior Litigation*

Park, Nguyen, and others formed True World, LLC (True World) to purchase a truck stop and land from the Nazaris and others in 2008.  When True World failed to make monthly mortgage payments, the Nazaris foreclosed.

Park and True World sued the Nazaris and others for (among other things) fraud, negligent misrepresentation, and

---

[1]    We adopt the spelling of Shariar's name used in his respondent's brief.  Several alternative spellings appear in the record, including Shahriar, Shshriar, and Shawn.

[2]    Undesignated statutory references that follow are to the Code of Civil Procedure.

breach of contract. Nguyen was a party to the litigation as a defendant to one of several cross claims asserted by Kelly.

Following a jury trial, the trial court entered a judgment in favor of Park, True World, and Nguyen. In a prior unpublished opinion, the Court of Appeal reversed an award of pre-judgment interest, but otherwise affirmed the judgment. The trial court entered a second amended judgment in 2017 awarding Park $251,713.99 from the Nazaris and other defendants; True World $558,626.07 from the Nazaris and other defendants; Park $100,000 from Shariar; and attorney fees and costs to Park, True World, and Nguyen.

### B. Plaintiffs' Complaint for Fraudulent Transfer, Quiet Title, and Declaratory Relief

Plaintiffs initiated this action against the Nazaris and others in 2019. As we shall discuss in more detail, they challenge certain transfers relating to the truck stop and the Nazaris' home in Chatsworth (assets in which plaintiffs have an interest as judgment creditors) and they seek a declaration of their right to access state funds to remedy environmental issues at the truck stop.

Plaintiffs allege that after the jury returned its verdict in the prior litigation, but before the trial court entered judgment, the Nazaris' attorney in that litigation recorded liens against both the truck stop and the Chatsworth residence.[3] The attorney,

---

[3]    Kelly had executed promissory notes for $100,000 (secured by a deed of trust on the truck stop) and $250,000 (secured by a deed of trust on the Chatsworth residence) for the law firm's services in the prior litigation.

3

David G. Torres-Siegrist (Torres-Siegrist), was then a partner in the law firm of Carpenter, Rothans & Dumont (the law firm). After Torres-Siegrist recorded the liens, plaintiffs executed on the judgment and (once again) took title to the truck stop. Torres-Siegrist subsequently "transferred or assigned some of the rights to" the lien against the truck stop to Albert Oganesyan (Oganesyan), who noticed a trustee sale.

Plaintiffs allege the promissory notes on which the liens were predicated were fraudulent because the Nazaris did not owe Torres-Siegrist or the law firm any attorney fees. They allege the law firm represented the Nazaris on a contingency basis, anticipating a percentage of any award on the Nazaris' cross claims in the prior litigation. Plaintiffs further allege Oganesyan did not pay reasonable value for the truck stop lien and was "acting as a strawman on behalf of the Nazari[s] . . . ." More specifically, plaintiffs allege the foreclosure sale of the truck stop was "a ruse orchestrated by the Nazari[s] . . . to regain title to the [truck stop] by and through Oganesyan."

Plaintiffs' complaint seeks to set aside the transfers or, at a minimum, obtain a determination that their title to the truck stop and liens against the Chatsworth residence are superior to the liens obtained by Torres-Siegrist and the law firm. In addition to their allegations regarding the liens, plaintiffs allege Shariar interfered with efforts to address soil contamination at the truck stop and obtain funding from the State Water Resources Control Board Underground Storage Tank Cleanup Fund (the Fund). In a cause of action against the Nazaris, the State Water Resources Control Board, and the local water board, plaintiffs seek, among other things, a declaration that the right to

Fund assistance runs with the land and belongs to them as owners in fee simple.

### C. *Torres-Siegrist's Anti-SLAPP Motion*

We first discuss Torres-Siegrist's anti-SLAPP motion because the Nazaris contend it has implications for their own anti-SLAPP motion.

The trial court granted Torres-Siegrist's motion in November 2019. The court determined the claims against Torres-Siegrist arose from protected activity because they were "based on the payment [he] received from his clients in exchange for legal services performed in another action. Broadly construed, the anti-SLAPP statute encompasses this activity because such payment is made in connection with a judicial proceeding." The trial court additionally concluded plaintiffs had not satisfied their burden of demonstrating a probability of success on the merits because the evidence indicated the disputed transfers were not fraudulent, the fraudulent transfer claims were barred by the litigation privilege in any case, and the judgment in the prior action "did not affect title to, or possession of the properties at issue . . . ."

Plaintiffs moved for reconsideration of this order and the trial court denied the motion. Plaintiffs then noticed an appeal from the trial court's order, but this court dismissed that appeal as untimely.[4]

---

[4] The Nazaris' request that we take judicial notice of the order of dismissal is granted. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

5

### D. The Nazaris' Anti-SLAPP Motion

The Nazaris filed their anti-SLAPP motion a few weeks after the trial court granted Torres-Siegrist's anti-SLAPP motion. Like Torres-Siegrist, they noticed their motion "for an order striking each of [p]laintiff's [c]omplaint [sic]." They argued "all of [p]laintiffs' claims arise from protected activity" because "litigation funding decisions and any communications made in connection with those decisions constitute statements or writings 'made in connection with an issue under consideration or review by a . . . judicial body'" for purposes of section 425.16, subdivision (e)(2). Citing allegations in the complaint concerning Torres-Siegrist and the law firm's role in the prior litigation, the Nazaris argued "the gravamen of the suit challenges a litigation funding decision and the communications made in connection with that decision." With respect to the merits, the Nazaris raised many of the same arguments the trial court discussed in its order granting Torres-Siegrist's motion and contended that order was "entitled to collateral estoppel effect."

At the hearing on the Nazaris' anti-SLAPP motion, the Nazaris' attorney suggested the trial court could strike some of plaintiffs' claims even if it did not strike the complaint in its entirety. The trial court observed the Nazaris "didn't ask for that" and, when the Nazaris' attorney suggested they "[did not] have to ask for that," the trial court responded, "I'm supposed to guess what you want? You made a motion that asks specifically that the entire complaint be dismissed. . . . [¶] . . . [¶] [Y]ou asked me to throw out the whole case. That's what you asked me for. . . . You moved to strike the entire complaint. It is only at this moment that you're now asking, 'oh, no, no, if you're not

6

going to throw out the complaint, throw out certain causes of action.' You did not seek that relief."

The foregoing exchange reflects the gist of the trial court's written order denying the motion. The trial court emphasized that, "[t]hroughout their papers, [the Nazaris] maintained that the entire complaint arose from protected activity and requested that the Court strike the complaint in its entirety." (Boldface omitted.) The Nazaris did not, however, demonstrate the complaint, "in its entirety, 'arises from' their protected activity . . . ." In addition to allegations concerning the transfers to Torres-Siegrist, the complaint seeks relief based on the Nazaris' use of Oganesyan to regain ownership of the truck stop, on the Nazaris' claimed interest in the truck stop and the Chatsworth residence, and on Shariar's interference with efforts to remedy environmental issues at the truck stop. The trial court concluded none of this is protected activity, and collateral estoppel does not apply because the allegations against the Nazaris are "in no way limited" to those concerning Torres-Siegrist.

The trial court declined the Nazaris' belated request to strike a more limited set of allegations and explained that although "a court *may* grant a motion to strike individual allegations of protected activity within a complaint or cause of action," no authority requires such an analysis "where the movant has taken the position that the entire complaint arises from protected activity and requests that the entire complaint be stricken." The trial court emphasized the Nazaris' burden to identify all allegations of protected activity and the claims for relief supported by them. The court determined it had no

7

"freestanding obligation . . . to cure defects in an overbroad motion."

## II.  DISCUSSION

The trial court's approach to the anti-SLAPP motion was correct.  As our Supreme Court has repeatedly emphasized, the moving party bears the burden "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*), citing *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); accord *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)  Because the Nazaris moved to strike only the entire complaint, and did not identify in their motion individual claims or allegations that should be stricken even if the entire complaint were not, the trial court was permitted to deny the anti-SLAPP motion once it concluded—correctly—that the complaint presented at least one claim that did not arise from anti-SLAPP protected conduct.

The Nazaris resist this only by suggesting the trial court was compelled to grant their motion because it previously granted Torres-Siegrist's anti-SLAPP motion.  Because the claims against Torres-Siegrist differ from those asserted against the Nazaris, however, the earlier ruling did not resolve identical issues as required for collateral estoppel to apply.

### A. The Trial Court Permissibly Chose to Deny the Anti-SLAPP Motion Because the Entire Complaint Does Not Arise from Protected Activity

The anti-SLAPP statute "authorizes a special motion to strike a claim 'arising from any act of [the moving party] in furtherance of [the party's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson*, *supra*, 7 Cal.5th at 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral*, *supra*, 1 Cal.5th at 384.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, *supra*, 11 Cal.5th at 1009.)

In *Baral*, our Supreme Court explained that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Baral*, *supra*, 1 Cal.5th at 393.) But certain obligations fall on an anti-SLAPP movant because this sort of surgical attack on a pleading is permitted. As *Baral* explains, "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Id*. at 396.) This is crucial because complaints frequently include claims arising from

9

protected activity alongside claims arising from unprotected activity, as well as "so-called 'mixed cause[s] of action' that combine[ ] allegations of activity protected by the statute with allegations of unprotected activity[.]" (*Id.* at 381.)

Following *Baral*, "most Courts of Appeal have taken a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole." (*Bonni, supra*, 11 Cal.5th at 1010.)  In *Bonni*, our Supreme Court considered the minority view that courts need not follow this approach—and may instead analyze whether the "gravamen" of a pleaded cause of action concerns protected activity—"when a defendant has moved to strike an entire cause of action rather than individual claims within a pleaded count." (*Id.* at 1011.) The Court rejected this view, holding that *Baral*'s claim-by-claim analysis is required "even though [the defendants] sought to strike [an] entire cause of action, rather than merely parts of it." (*Ibid.*)  Adopting the minority view would "risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims" and "yield overinclusive and underinclusive results." (*Ibid.*)

*Bonni* did not hold, however, that every invocation of the anti-SLAPP statute, however broad, requires plaintiffs or courts to perform the claim-by-claim analysis prescribed in *Baral*.  To the contrary, *Bonni* recognizes a "nonmovant should not be put to the burden of parsing the cause of action in the moving party's stead" and explains that "well-established anti-SLAPP law" provides a solution when an anti-SLAPP movant seeks to impose burdens on the nonmovant or the trial court by filing an overbroad or nonspecific motion: "attention to the allocation of

10

the applicable burden of proof." (*Bonni*, *supra*, 11 Cal.5th at 1011.) "If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Ibid.*)

Extending these principles to a motion targeting an entire complaint is only a matter of degree. Where a defendant moves to strike the entire complaint and fails to identify, with reasoned argument, specific claims for relief that are asserted to arise from protected activity, the defendant does not carry his or her first-step burden so long as the complaint presents at least one claim that does not arise from protected activity. Here, the Nazaris not only failed to identify specific claims for relief arising from protected activity, they expressly asked the court to perform the type of gravamen analysis disapproved in *Bonni*. At no point did the Nazaris "identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at 884.) And there are obviously claims in the complaint that do not arise from anti-SLAPP protected activity, e.g., the claim that the Nazaris are interfering with their ability to obtain funding from the Fund.

The Nazaris' accordingly did not carry their first-step anti-SLAPP burden. As the trial court suggested at the hearing on the Nazaris' motion, the problem for the Nazaris was their failure to link specific claims for relief to protected activity. The trial court's question—"I'm supposed to guess what you want?"—was, in substance, a rejection of the Nazaris' suggestion that the court

11

"should . . . be put to the burden of parsing the [complaint] in [their] stead."[5] (*Bonni*, *supra*, 11 Cal.5th at 1011.)

Our Supreme Court's guidance from *Baral* to *Bonni* explains that while courts may strike less than the entirety of a complaint or pleaded cause of action, the trial court is not required to take on the burden of identifying the allegations susceptible to a special motion to strike. If a defendant wants the trial court to take a surgical approach, whether in the alternative or not, the defendant must propose where to make the incisions.

---

[5]    In *Balla v. Hall* (2021) 59 Cal.App.5th 652 (*Balla*), the Court of Appeal held that the trial court "erred by concluding it had to deny . . . anti-SLAPP motions [noticed as motions to strike complaints "in [their] entirety"] if any portion of the complaints were actionable." (*Id.* at 666, 671.) The court reasoned "*Baral* makes clear that not only can an anti-SLAPP motion attack portions of causes of action, but also that whether it does so turns on how the issues are framed—not simply the text of the notice of motion." (*Id.* at 672.)

Insofar as *Balla* holds a trial court *may* parse the claims in a complaint even when an anti-SLAPP movant does not discharge his or her burden to, as *Baral* says, "identify[ ] all allegations of protected activity, and the claims for relief supported by them" (*Baral*, *supra*, 1 Cal.5th at 396), we agree. Insofar as *Balla* holds a trial court *must* do so, we hold to the contrary. When a trial court is presented with an anti-SLAPP motion that seeks to strike only the entire complaint and does not identify specific claims or allegations that should be stricken even if the entire complaint is not, the court can properly deny the motion so long as the court concludes the movant is not entitled to the relief sought, i.e., so long as the court concludes the complaint presents at least one claim that does not arise from anti-SLAPP protected activity.

12

This is done by identifying, in the initial motion, each numbered paragraph or sentence in the complaint that comprises a challenged claim and explaining "the claim's elements, the actions alleged to establish those elements, and wh[y] those actions are protected." (*Bonni*, *supra*, 11 Cal.5th at 1015.)

**[Part II.B, below, is deleted from publication. See *post* at p. 15 for where publication is to resume.]**

    B.     *Issue Preclusion Principles Do Not Compel a Different Result*

Issue preclusion, also known as collateral estoppel, "prohibits the relitigation of issues argued and decided in a previous case . . . ." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. [Citations.]" (*Id.* at 825.) "Whether collateral estoppel applies in a particular case is a question of law which we review de novo. [Citation.]" (*Duarte v. State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 389, fn. 11.)

We assume without deciding that a prior order in the same litigation may have preclusive effect. (*Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1554 [holding that an appellate ruling on a co-defendant's anti-SLAPP motion barred the plaintiff "from relitigating the issue of its probability of prevailing on the merits"]; *Hoang v. Tran* (2021) 60 Cal.App.5th 513, 530; but see *People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273 ["[T]he California Supreme Court and courts of appeal have

expressed doubt that the doctrine of collateral estoppel applies in further proceedings in the same litigation," but the issue "has not been resolved definitively"]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 165, fn. 6.)  We further assume for the sake of argument that plaintiffs' appeal of the order granting Torres-Siegrist's motion did not prevent the trial court's ruling from having preclusive effect even though we had not yet dismissed the appeal when the trial court ruled on the Nazaris' motion.[6]  (*Riverside County Transportation Com. v. Southern California Gas Co.* (2020) 54 Cal.App.5th 823, 838 ["a judgment is not final for purposes of res judicata or collateral estoppel if an appeal is pending or could still be taken"].)

Even with these assumptions, there is still a fatal flaw in the Nazaris' issue preclusion argument: their anti-SLAPP motion did not raise the same issue as Torres-Siegrist's motion.  At the first step of the anti-SLAPP analysis, both Torres-Siegrist and the Nazaris' motions were framed such that the issue was whether *all* claims against the moving party or parties arose from protected activity.  Because the allegations and claims for relief against Torres-Siegrist and the Nazaris differed, the substance of this question differed from one motion to the next.  To cite only the most obvious example, Torres-Siegrist is not named in—and apparently had nothing to do with—the cause of

_____

[6]     At oral argument, the Nazaris cited *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 683-684 for the proposition that an issue does not have to be decided on appeal for collateral estoppel to apply.  Even if the cited authority actually discussed this point, it has no bearing on the point regarding finality.

14

action relating to plaintiffs' entitlement to Fund assistance in addressing environmental issues at the truck stop. The trial court's ruling that all claims against Torres-Siegrist arose from protected activity did not resolve whether *this claim* against the Nazaris arises from protected activity. Put another way, the earlier ruling did not resolve the dispositive issue of whether all claims against the Nazaris arise from protected activity.

**[The remainder of the opinion is to be published.]**

DISPOSITION

The order denying the Nazaris' anti-SLAPP motion is affirmed. Plaintiffs shall recover their costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

15