Filed 3/5/14  P. v. World Wide Mediacom CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE et al., | B241365 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC432204) |
| v. | |
| WORLD WIDE MEDIACOM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Reversed and remanded with directions.

Carmen A. Trutanich and Michael N. Feuer, City Attorneys, Tina Hess and Jose A. Egurbide, Assistant City Attorneys, and Andrew K. Wong, Deputy City Attorney, for Plaintiffs and Appellants.

Law Office of Esperanza Cervantes Anderson and Esperanza Cervantes Anderson for Defendants and Respondents World Wide Mediacom, Mediacom Inc., and Scott Krantz.

Knight Law Group and Raaqim A. S. Knight for Defendants and Respondents Mark Denny and MD Graphic Installers, Inc.

Webb & Beecher, Eric L. Webb and Brian G. Beecher for Defendant and Respondent World Wide Rush.

O'Melveny & Myers, Michael M. Maddigan and Carol Abernathy for Defendant and Respondent The Davis Group.

_____

## INTRODUCTION

In 2010, the California Department of Transportation (Caltrans) settled an administrative action brought to enforce the Outdoor Advertising Act (OAA). (Bus. & Prof. Code, § 5200 et seq.)[1] That settlement included a release of claims against defendants and respondents World Wide Rush, LLC; The Davis Group LLC; World Wide Mediacom LLC; Mediacom, Inc.; Scott Krantz; MD Graphic Installers, Inc.; and Mark Denny (collectively, defendants). While the administrative action was pending, plaintiffs and appellants The People of the State of California and the City of Los Angeles (collectively, appellants) filed a complaint in superior court against defendants that also alleged violations of the OAA. Unlike the administrative action, however, the complaint alleged causes of action under section 17200, the Unfair Competition Law (UCL).

Defendants demurred to the operative complaint on the ground, among others, that the administrative action was res judicata to the state court action. The trial court

_____

[1] All further statutory references are to the Business and Professions Code.

2

sustained the demurrer without leave to amend.  Because we conclude that res judicata does not apply, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    Factual background.**

    A.    *Supergraphic signs and the OAA.*

Supergraphic signs are "outdoor advertising displays that are affixed to and cover all or much of the faces of multi-story buildings."  They are " 'enormously large advertisements, usually on a type of vinyl, that are stretched or pasted across the side of a building.  They are hard to miss.  Supergraphics often span the width of a building and cover over ten floors.' "[2]  Illegal supergraphic signs are serious traffic hazards because their "size, imagery, placement and prominence" divert motorists' attention; they detract from the city's appearance and reduce surrounding property values by adding to visual clutter and changing the character of prominent buildings; they endanger tenants' lives by impairing firefighters' ability to conduct rescue operations; they jeopardize the state's receipt of federal highway funds and other revenue; and they place competitors who comply with laws at a competitive disadvantage.

California's OAA regulates outdoor advertising displays adjacent to or visible from state highways.  (§ 5200 et seq.)  The OAA, for example, prohibits advertising displays within 660 feet of interstate and primary highway right-of-ways, although there are exceptions.  (§ 5405; see also § 5440 [prohibiting advertising displays along landscaped freeways unless the advertisement is for products or services offered on the premises].)  The OAA also imposes safety measures regulating size, spacing and location.  (§ 5400 et seq.)  Outdoor advertisers must be licensed by Caltrans (§ 5301), and outdoor advertising requires a permit from Caltrans (§ 5350).

Violations of the OAA are punishable as misdemeanors.  (§ 5464.)  Advertising that violates the OAA are public nuisances and may be removed.  (§ 5461.)  Under the

---

[2]    Quotation from *World Wide Rush LLC v. City of Los Angeles* (C.D.Cal. 2009) 605 F.Supp.2d 1088, 1091, reversed (9th Cir. 2010) 606 F.3d 676.

OAA, the director may revoke licenses and permits and may move and destroy advertising displays placed in violation of the OAA. (§ 5463; Cal. Code Regs., tit. 4, § 2241.) If illegal advertising displays are not removed after written notice of a violation, a $10,000 penalty may be imposed plus a $100 fine per each day the advertising is maintained after written notice is sent. (§ 5485, subd. (b)(2).) Gross revenues from an unauthorized advertising display shall be disgorged. (§ 5485, subd. (c).)

Cities and counties may also enact ordinances placing restrictions on advertising displays that are equal to or greater than those imposed by the OAA. (§ 5230.) In 2002, the Los Angeles City Council banned supergraphic signs, with some exceptions. That ban was enjoined in August 2008 by an order of the United States District Court, which found it unconstitutional. (*World Wide Rush, LLC v. City of Los Angeles* (C.D.Cal. 2008) 579 F.Supp.2d 1311.) But in 2010, the Ninth Circuit reversed the district court. (*World Wide Rush, LLC v. City of Los Angeles* (9th Cir. 2010) 606 F.3d 676 [2010 U.S. App. LEXIS 10797].) By that time, the Los Angeles City Council, in August 2009, had issued Ordinance No. 180841 banning supergraphic signs.

B.    *The Caltrans administrative action.*

Caltrans administers and enforces the OAA. (§§ 5250, 5252-5254.) In or about November 2009, Caltrans initiated an administrative action (the "Caltrans action") against, among others, World Wide Rush (Rush) contending that it displayed "outdoor advertising structures" in violation of the OAA; namely, Rush displayed advertising without first having secured a written permit, that exceeded size limits and was adjacent to a landscaped freeway.[3] The accusation asked that the violations be corrected or the advertising displays removed, for "all penalties allowed including, but not limited to, those set forth in section 5485(b)(2) of the Act," and for any "other and further action as may be deemed just and proper."

---

[3]    The accusation also named as respondents, CB Richard Ellis, Inc., SMIII Sepulveda Center LLC, and Barry L. Rush, none of whom are a party to this appeal.

4

On February 2, 2011, the Caltrans action settled. The settlement agreement and release was entered into and by "the California Department of Transportation, individually and for and on behalf of the People of the State of California." Under the release, "[c]omplainant, the People of the State of California, acting by and through the California Department of Transportation" released, among others, Rush; World Wide Mediacom LLC and Mediacom Inc. (collectively, Mediacom); Scott Krantz (Mediacom Inc.'s president); MD Graphic Installers (Graphic); Mark Denny (Graphic's president); and Davis Group Realty (Davis Group),[4] even though they had not been specifically named as respondents in the Caltrans action, from "all claims . . . of every nature and description, whether known or unknown, contained in or arising out of the Action, or that could have been alleged based on the facts set forth in the Action or involving the Released Parties or the Properties, including, without limitation, claims that Respondents or any other Released Parties violated any provision of the Act, including, without limitation, claims under California Business and Professions Code §§ 5350, 5408, 5440, 5485(b)(2), 5485(c) and 5485(d), . . . 17200 *et seq.*, claims of public and/or private nuisance, including claims under . . . Civil Code §§ 3479-80, 3491, California Code of Civil Procedure § 731, Business and Professions Code § 5461, and any and all other claims that involve the same or similar facts alleged or that arise or have arisen in connection with the Action and the Properties, against the Released Parties . . . ."

The terms of the settlement included removal of advertising displays and a $218,000 payment to Caltrans. The five properties subject to the settlement were: 3415 South Sepulveda Boulevard, Los Angeles, California 90034; 1606 Cotner Avenue, Los Angeles, California 90025; 3280 North Cahuenga Boulevard, Los Angeles, California 90068; 15301-15303 Ventura Boulevard, Los Angeles, California 91403; and 10801 National Boulevard, Los Angeles, California 90064.

---

[4] The release named 26 entities.

C.    *The current state court action.*

While the Caltrans action was pending and before it was settled, "The People of the State of California and the City of Los Angeles"[5] filed this state court action against defendants in February 2010 to abate public nuisances and for injunctive relief, disgorgement of gross revenues and civil penalties, with the operative second amended complaint filed in June 2011.[6]  According to the complaint, Rush, Mediacom and Krantz (the Sign Company defendants) leased wall areas on the faces of buildings to erect supergraphic signs.  Graphic and Denny (the Installer defendants) installed the signs for the Sign Company defendants.  Davis Group leased the face of its office building at 3280 North Cahuenga Boulevard to the Sign Company defendants.  The properties on which illegal supergraphic signs were erected include the five named in the Caltrans action and thirteen others.

The second amended complaint alleged these causes of action, which are the subject of this appeal:  (1) *First Cause of Action*—section 17200 against all defendants; (2) *Second Cause of Action*—conspiracy to violate the UCL against all defendants except Davis Group; (3) *Eighth Cause of Action*—section 5485, subdivisions (b)(2), (c) and (d) against Rush, Mediacom, and Krantz relating to 4605 North Lankershim Boulevard; (4) *Ninth Cause of Action*—section 5485, subdivisions (c) and (d) against Rush, Mediacom, and Krantz relating to 1818 Oak Street; and (5) *Tenth Cause of Action*— section 5485, subdivisions (b)(2), (c) and (d) against Scott Fisher relating to 6081 Center Drive.[7]

---

[5]    The Los Angeles City Attorney represents both.

[6]    The second amended complaint named other defendants who are not a party to this appeal.

[7]    Appellants do not appeal the dismissal of the third through seventh causes of action.  Those causes of action concerned the five properties that were the express subject of the Caltrans action:  3415 South Sepulveda; 10801 National; 1606 Cotner; 3280 North Cahuenga; and 15301-15303 Ventura.

As to the first and second causes of action, the People asked for an order removing illegal advertising displays and for an injunction against the placement of any advertising display within the city "without all required permits, approvals and inspections and that do not otherwise comply fully with all laws." The People asked for restitution under sections 17203 and 17204 and for a civil penalty of $2,500 per violation under section 17206. As to the eighth and tenth causes of action, the City asked for civil penalties and disgorgement of revenue. As to the ninth cause of action, appellants asked for disgorgement of revenue.

## II. Procedural history.

Defendants separately demurred[8] to the second amended complaint and asked for judicial notice of the settlement agreement in the Caltrans action. Appellants opposed the demurrers. On January 9, 2012, the trial court issued orders sustaining the demurrers to the second amended complaint on the ground that the Caltrans action was res judicata as to the second amended complaint. The court took judicial notice of the settlement agreement.[9]

The trial court entered judgment. This appeal followed.[10] The People appeal the dismissal of the first and second causes of action, and the City appeals the dismissal of the eighth, ninth, and tenth causes of action.[11] They do not appeal the dismissal of the third through seventh causes of action.

---

[8]     Rush, Mediacom and Krantz, Graphics and Denny, and Davis Group filed separate demurrers.

[9]     The trial court denied appellants' motion for reconsideration.

[10]     Citywide, a defendant named in the second amended complaint, was a party to the appeal until it and appellants settled their claims. They therefore do not pursue the appeal of the April 23, 2012 judgment in Citywide's favor.

[11]     Although appellants state that they are appealing dismissal of the tenth cause of action, it was not alleged against any of the defendants responding to the appeal, and they did not demur to it. It therefore does not appear to be a proper subject of the appeal.

## DISCUSSION

### I.  Standard of review.

To determine whether a plaintiff has properly stated a claim for relief, "our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed."  [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'  [Citations.]"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Our review is de novo.  (*Ibid.*)  Toward this end, we must liberally construe the complaint with a view to achieving substantial justice between the parties.  (Code Civ. Proc., § 452.)

### II.  The trial court properly took judicial notice of the settlement agreement.

Appellants' first contention is the trial court improperly took judicial notice of the truth of the contents of the settlement agreement in the Caltrans action.  We disagree.

When deciding the sufficiency of a complaint to withstand a demurrer, a court may consider any matter subject to judicial notice.  (Code Civ. Proc., § 430.30, subd. (a).) Under Evidence Code section 452, judicial notice may be taken of, for example, "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States."  (Evid. Code, § 452, subd. (c); see also *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 607-608 [judicial notice could be taken of filings submitted to Department of Insurance, although judicial notice of materials prepared by private parties that are merely on file with the department are not noticeable under Evidence Code section 452, subdivision (c)]; *Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299 ["If all of the facts necessary to show that an action is

8

barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.] In ruling on a demurrer based on res judicata, a court may take judicial notice of the official acts or records of any court in this state"].)

Appellants acknowledge that the trial court could take judicial notice of the settlement agreement as an official record in the Caltrans action.[12] Appellants argue that what the trial court could not do, but did, was take judicial notice of the *truth* of the settlement's contents. They are correct that judicial notice may not be taken of the truth of any factual assertions in the matter to be noticed. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1569.) *Sosinsky* summarized the distinction between taking judicial notice of a matter and the truth of the matter this way: "that [a] judge believed A (i.e., that the judge ruled in favor of A on a particular factual dispute) is different from the taking of judicial notice that A's testimony must necessarily have been true simply because the judge believed A and not B." (*Id.* at p. 1565.) A court, for example, can therefore take judicial notice of the existence of a factual finding in a settlement agreement but not the truth of the finding. (*Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120.)

*Sosinksy* also discussed the interplay between judicial notice and res judicata: "Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided . . . ." (*Sosinsky v. Grant, supra,* 6 Cal.App.4th at p. 1569.)

There is no indication that the trial court here improperly took judicial notice of the truth of any facts in the settlement agreement. The court said it was taking judicial

---

[12] Because the trial court could take judicial notice of the settlement agreement under subdivision (c) of Evidence Code section 452, we need not address whether judicial notice was proper under any other subdivision, for example, subdivision (d), which concerns judicial notice of, among others, records of any court of this state.

9

notice of the settlement agreement and, specifically, "of the existence of such facts within these documents, rather than relying on the truth of such facts." Because the court was not judicially noticing the truth of the facts in the settlement agreement, the court overruled appellant's hearsay objections. The court thus clearly understood that it could not take judicial notice of the truth of any hearsay statements merely because they were in a document constituting an official act. (*Sosinsky v. Grant, supra,* 6 Cal.App.4th at p. 1566.) Rather, the trial court could take judicial notice of the settlement agreement and consider whether it precluded litigation of the claims raised in the superior court action.

## III.     Res judicata does not bar the superior court action.[13]

Appellants contend that the settlement of the Caltrans action does not bar the current action under the doctrine of res judicata. We agree.

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted.)

For res judicata to apply, there must have been (1) a final judgment on the merits;[14] (2) the party against whom the principle is invoked was a party or is in privity with a party to the prior adjudication; and (3) the issue decided in the prior adjudication must be identical with the one presented in the subsequent litigation. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797; *Bullock v. Philip Morris USA, Inc.* (2011)

---

[13]     Graphics and Denny join Rush's arguments regarding res judicata and judicial notice.

[14]     The People do not challenge the first element.

10

198 Cal.App.4th 543, 557; *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 (*Citizens for Open Access*).)  Even if these three requirements are met, res judicata will not be applied if injustice would result or the public interest requires that litigation not be foreclosed.  (*Citizens for Open Access,* at p. 1065.)

The second element of privity refers " 'to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' [Citations.]"  (*People v. Sims* (1982) 32 Cal.3d 468, 486-487, superseded by statute as stated in *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851; see also *Citizens for Open Access*, *supra,* 60 Cal.App.4th at pp. 1069-1070.)  Courts have held "that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government."  (*Lerner v. Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 398; see also *Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 535.)  Still, the State of California is not a single entity  (*People v. Hy-Lond Enterprises, Inc.* (1979) 93 Cal.App.3d 734, 751-752), and "[t]he acts of one public agency will bind another public agency only when there is privity, or an identity of interests between the agencies" (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 995; see also *Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1330 [where the interests of public agencies conflict, there is no privity]).

Underlying the third element of the res judicata doctrine is the "primary right theory."  (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 904; *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 686.)  Under this theory, the invasion of one " 'primary right' " gives rise to a single cause of action, even though there might be several remedies available to protect that primary right and several legal remedies on which the injury is premised.  (*Frommhagen v. Board of Supervisors, supra,* 197 Cal.App.3d at pp. 1299-1300; *Mycogen*, at p. 904.)  The doctrine rests on the " [']ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action

11

in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.' " (*Citizens for Open Access, supra,* 60 Cal.App.4th at p. 1065.) Res judicata thus "not only precludes the relitigation of issues that were actually litigated, but also precludes the litigation of issues that could have been litigated in the prior proceeding." (*Bullock v. Philip Morris USA, Inc., supra,* 198 Cal.App.4th at p. 557; see also *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576-577.)

Even when there might be a "sufficient identity of parties" and the former and current cases involve the "same cause of action," res judicata may not apply if the statutory scheme at issue explicitly or implicitly shows a contrary intent. (*People v. Damon* (1996) 51 Cal.App.4th 958, 968, 970 (*Damon*); *Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237.) In *Damon*, the Department of Consumer Affairs, represented by the Attorney General, filed an administrative action against Damon's auto shop for violations of the Automotive Repair Act. (51 Cal.App.4th at p. 963.) An administrative decision, among other things, suspended Damon's registration. (*Id.* at p. 964.) Thereafter, the People, represented by the district attorney, filed a civil complaint alleging claims under sections 17200 and 17500. (*Damon*, at p. 964.) The unfair competition claim alleged the same violations of the Automotive Repair Act that had been the subject of the accusation, and it sought injunctive relief and civil penalties.

*Damon* found that res judicata did not bar the civil action. An action to suspend or revoke an automotive registration could only have been brought before an administrative officer. (*Damon, supra,* 51 Cal.App.4th at p. 971.) The administrative tribunal, however, did not have jurisdiction to award damages or penalties for unfair business practices. Those claims could only be brought in superior court. (*Id.* at pp. 971-972; see also §§ 17204, 17206, 17535, 17536.) "Since the administrative and civil provisions afford cumulative remedies which cannot all be sought in one proceeding, the statutory scheme plainly envisions that both an administrative proceeding and a civil action may be brought." (*Damon,* at p. 972.) "[B]ecause the first proceeding was an administrative

12

proceeding at which the second remedy (statutorily decreed to be a cumulative remedy) could not be sought," res judicata was inapplicable. (*Ibid.*; see *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170 ["[a]n important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum"].)

Here, the first and second causes of action in the second amended complaint are under the UCL.[15] The complaint alleges that beginning about July 2006 through at least June 2010, defendants "violated the UCL by having engaged, engaging and proposing to engage in . . . unlawful business acts and practices, . . . relating to the aforementioned advertising displays and supergraphic and off-site signs" at 18 sites, five of which were also the subject of the Caltrans action. The unlawful practices included placing advertising displays that allegedly violated the OAA and Los Angeles Municipal Code and ordinances, as well as building, fire and zoning codes.

These UCL claims could not have been brought in the administrative Caltrans action. Section 17204 of the UCL provides that any action for relief shall be "prosecuted exclusively in a court of competent jurisdiction." (See also § 17203 ["Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction"].) Section 17204 thus "authorizes an assortment of persons to bring enforcement actions but prohibits enforcement of section 17200 in noncourt proceedings and in courts that lack competent jurisdiction." (*Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1330 (*Greenlining*); see

---

**15** The second cause of action is for conspiracy to violate the UCL. Defendants argue that conspiracy is a legal theory, not a cause of action. "[A] civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.) Stated another way, " '[t]here is *no separate tort* of civil conspiracy, and there is *no civil action* for conspiracy to commit a recognized tort unless the *wrongful act* itself is committed and damage results therefrom.' [Citations.]" (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574.) Therefore, if appellants can state a claim under section 17200, the civil conspiracy claim may also go forward.

13

also *id.* at p. 1329 ["Actions seeking any relief under section 17200 et seq. 'shall,' i.e., *must*, be brought in court," which generally is a superior court].)

To be sure, the Caltrans action and the superior court action concern a similar "primary right" concerning illegal advertising displays. But, to the extent that res judicata bars claims that were or *could have been* brought in the prior action, the UCL claims could not have been brought in the Caltrans action. "[T]he UCL authorizes duplicate enforcement by both public prosecutors and administrative agencies—a UCL action by law enforcement officials does not preclude a later administrative proceeding against the same defendant concerning the same conduct, and an administrative proceeding does not preclude a later law enforcement action under the UCL." (*Blue Cross of California, Inc. v. Superior Court, supra,* 180 Cal.App.4th at p. 1250.) Therefore, so long as no other statute expressly provides to the contrary, the UCL gives the city attorney the right to raise UCL claims in the superior court. (*Id.* at p. 1253; see also § 17205 ["Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state"].)

The OAA itself contemplates that entities other than Caltrans will enforce its provisions. Section 5230 of the Act, for example, provides that a city or county may enact ordinances imposing restrictions on advertising displays, and such restrictions may be "equal to or greater than those imposed by" the OAA. An advertising display permitted under the OAA must still comply with any city or county ordinance. (§ 5366.) Nothing in the OAA "prohibits enforcement of any or all of its provisions by persons designated so to act by appropriate ordinances duly adopted . . . ." (§ 5227.) And, like the UCL, the OAA provides that the remedies for the removal of illegal advertising displays "are cumulative and not exclusive of any other remedies provided by law." (§ 5465; see also § 17205 [remedies provided under the UCL are cumulative].) While Caltrans could therefore seek various remedies for violations of the OAA, such as penalties and removal of the advertising displays, the statutory scheme contemplates that other public agencies will enforce it in other forums.

14

We therefore disagree with defendants' argument that the second amended complaint is really about violations of the OAA and not the UCL. The scope of section 17200 is "broad." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) It " ' "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable. [Citations.]" (*Ibid.*) The People's UCL claims therefore "borrow" violations of the OAA, as well as alleged violations of city ordinances and building, zoning, and fire codes. The superior court action also alleges a more widespread practice of unfair competition, citing violations at 18 properties, whereas the Caltrans action identified only 5 properties at which OAA violations occurred.

That Caltrans and defendants purported to settle UCL claims does not curtail appellants' ability to purse the state court action. The accusation in the Caltrans action was brought under the OAA and not the UCL. It alleged violations of the OAA only and sought penalties under section 5485, subdivision (b)(2),[16] of that Act. The settlement agreement thus described the Caltrans action this way: "Complainant alleged that Respondents owned and/or operated outdoor advertising displays at the Properties that violated the [OAA] by (1) having been erected or placed without a written permit; (2) exceeding 1,200 square feet in size; and/or (3) being placed adjacent to a landscaped freeway. . . . In the Action, Complainant asserted that Respondents . . . are liable for more than $400,000 in penalties and disgorgement of gross revenues in connection with signs at [the] Properties . . . ." Although the accusation did not raise a claim under the UCL, the settlement agreement contained a broad release of all claims, including ones

---

**16** Subdivision (b) of section 5485 provides: "If a display is placed or maintained without a valid, unrevoked, and unexpired permit, the following penalties shall be assessed: [¶] . . . [¶] (2) If the advertising display is placed or maintained in a location that does not conform to the provisions of this chapter or local ordinances, and is not removed within thirty days of written notice from the department or the city or the county with land use jurisdiction over the property upon which the advertising display is located, a penalty of ten thousand dollars ($10,000) plus one hundred dollars ($100) for each day the advertising display is placed or maintained after the department sends written notice shall be assessed."

15

under section 17200 and of Civil Code section 1542.[17]  By virtue of this broad release, defendants contend that section 17200 claims have been settled.  But an administrative agency cannot create jurisdiction over claims where jurisdiction does not exist. (*Greenlining, supra,* 103 Cal.App.4th at p. 1332 ["Even if the PUC had adjudicated UCL claims, the PUC cannot create jurisdiction where it does not otherwise exist"]; see *City and County of San Francisco v. Padilla* (1972) 23 Cal.App.3d 388, 400-401 ["when an administrative agency acts without or in excess of its jurisdiction, or in violation of the powers conferred upon it, its action thus taken is void"].)[18]  Caltrans therefore could not settle the UCL claims, having no jurisdiction over them.[19]

## IV.    Defendants' alternative grounds for sustaining the demurrers.

In addition to res judicata, defendants raise multiple other grounds why the demurrers were properly sustained.

---

[17]    "The above Released Claims provided by this Settlement include claims that Complainant does not know or suspect to exist in its favor against the Released Parties. Complainant waives all rights and benefits afforded by section 1542 of the California Civil Code and any other similar statute in another jurisdiction or forum that may be applicable as it relates to the Released Claims and does so understanding the significance of that waiver."

[18]    *Padilla* found that the city board of permit appeals lacked subject matter jurisdiction to issue a variance, and therefore the board's decision was not res judicata to a later state court action.

[19]    Davis Group also argues that Caltrans could release the UCL claims under Government Code section 11415.60, subdivision (c).  That subdivision states:  "A settlement [of an adjudicative proceeding] is subject to any necessary agency approval. . . .  The terms of a settlement may not be contrary to statute or regulation, *except that the settlement may include sanctions the agency would otherwise lack power to impose*."  (Italics added.)  Although, Davis Group relies on the italicized language, the subdivision did not give Caltrans jurisdiction to settle UCL claims belonging to other government entities.  In any event, releasing the UCL claims was not a sanction imposed against the settling defendants.  It was a benefit.

16

First, by virtue of the broad release and as a matter of contract law,[20] defendants contend that the City may not pursue its claims against properties that were not identified in the Caltrans action but that are the subject of this state court action in the eighth, ninth and tenth causes of action. The eighth and tenth causes of action allege violations of the OAA and seek relief under section 5485, subdivisions (b)(2), (c) and (d), while the ninth cause of action seeks relief under subdivisions (c) and (d) of the Act.[21] Those causes of action concern three properties not identified in the Caltrans action: 4605 North Lankershim, 1818 Oak, and 6081 Center. The Caltrans action identified OAA violations at only five locations: 3415 South Sepulveda; 10801 National; 1606 Cotner; 3280 North Cahuenga; and 15301-15303 Ventura. The settlement agreement in the Caltrans action expressly defined the properties as those five locations. Even if the release of claims extended to properties not identified in the settlement agreement, the OAA expressly provides that other appropriate government entities may enforce its provisions. (§§ 5227, 5465.)

Second, Rush, Mediacom, and Krantz argue that the advertising displays were not unlawful.[22] They point out that the federal district court enjoined the City from enforcing its ban on supergraphic signs. (*World Wide Rush, LLC v. City of Los Angeles, supra,* 579

---

[20] The trial court also sustained the demurrers "as a matter of contract" based on the release.

[21] Subdivision (b)(2) of section 5485 provides for a $10,000 penalty plus a $100 per day fine each day a display is illegally maintained after written notice is sent. Subdivision (c) provides for disgorgement of revenues. Subdivision (d) provides that the "department or a city or a county within the location upon which the advertising is located may enforce the provisions of this section."

[22] The trial court said that the first and second causes of action for violations of the UCL and civil conspiracy fail because of res judicata and California's primary rights doctrine. The trial court then said, "Because the predicate acts upon which these [c]auses of [a]ction . . . are not in fact unlawful, Krantz's [d]emurrer is sustained without leave to amend." The trial court's precise meaning is unclear, but it does not appear that the court was saying no law had been violated as opposed to saying res judicata simply barred the matter.

17

F.Supp.2d 1311 [invalidating Los Angeles Municipal Code sections 14.4.4(B)(9), (11) and 14.4.6 banning offsite and supergraphic signs].)  That injunction was in force from about August 2008 to July 2010.  In 2010, the Ninth Circuit reversed the district court and lifted the injunction.  (*World Wide Rush, LLC v. City of Los Angeles, supra,* 606 F.3d 676.)  Whether defendants violated a ban on supergraphic signs, however, is not dispositive of any issue on appeal.  The second amended complaint alleges that the advertising displays violated a myriad of ordinances, laws, and codes, thereby violating the UCL.  Therefore, even if we assumed that defendants did not violate the injunction, that does not mean they complied with all other laws.

Third, Graphics and Denny argue that due process mandates dismissal of the claims against them.  They contend that "the only violations alleged in the SAC were violations of orders that were directed to third parties, orders with which Respondents had no legal ability to comply, and ordinances that do not apply to them."  The second amended complaint, however, alleges that Graphics and Denny installed advertising displays that violated, among other things, building and fire codes.  Denny defied a stop-work-order notice.  Therefore, whether any notice Graphics and Denny received or did not receive violated their due process rights is not an issue properly resolved on a demurrer based on the totality of the allegations.

Finally, Rush argues that the People have waived their claims by failing to raise them by compulsory cross-complaint in the United States federal court action, *World Wide Rush, LLC v. City of Los Angeles, supra,* 579 F.Supp.2d 1311.  (See generally, Code Civ. Proc., § 426.30, subd. (a) ["Except as otherwise provided by statute, if a party against whom a complaint has been filed . . . fails to allege in a cross-complaint any related cause of action which . . . he has against the plaintiff, such party may not thereafter . . . assert against the plaintiff the related cause of action not pleaded"]; *Maldonado v. Harris* (2004) 370 F.3d 945, 951.)  The UCL claims, however, are pursued in this action by the People, who were not a party to the federal action.  Moreover, the federal action concerned Rush's claim that the signage ban was unconstitutional.  In contrast, at issue in this state court action are UCL claims and claims that defendants

18

violated the OAA at specified properties.  Thus, both the federal and state actions generally concerned supergraphic advertising displays, but that does mean that the causes of action arise out of " 'the same transaction, occurrence, or series of transactions or occurrences.' " (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 960.)

## V.  The personal liability of Scott Krantz and Mark Denny.

The trial court also sustained without leave to amend the demurrers of Krantz and Denny.[23]  Appellants contend that the demurrers should have been overruled because Krantz and Denny, as officers of their respective companies, personally participated in the alleged wrongdoing.  We find that the second amended complaint alleges facts sufficient to withstand demurrer as to those individual defendants.

"[C]orporate directors cannot be held *vicariously* liable for the corporation's torts in which they do not participate.  Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise.  [Citation.]  '[A]n officer or director will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented. . . .  While the corporation itself may be liable for such acts, the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.'  [Citation.]"  (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 503-504.)  "A corporate director or officer's participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts. . . .  [¶]  The legal fiction of the corporation as an independent entity was never intended to insulate officers and directors from liability for their own tortious conduct."  (*PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1380-1381; see also, *id.* at pp. 1387-1388 ["Shareholders, officers, and directors of corporations have [also] been held personally liable for intentional torts when they knew or had reason to know about but failed to put a stop to tortious conduct"].)

---

**23**  Krantz is a defendant on the first, second, eighth, and ninth causes of action. Denny is a defendant on the first and second causes of action.

For an officer or director to be personally liable for violations of section 17200, the evidence must establish his or her direct participation in the unlawful practices. (*People v. Toomey* (1984) 157 Cal.App.3d 1, 15; *People v. Conway* (1974) 42 Cal.App.3d 875, 884-886.) In *Toomey*, the defendant owned and was president of a business that sold discount coupons for use at casinos. Evidence showed that he "orchestrated all aspects of the business," including those which were found to violate sections 17200 and 17500, such as preparing the solicitation of scripts, determining the content of coupon packages, and directing the company's refund policy. (*Toomey,* at p. 15.) Similarly, in *Conway,* the president of an automobile dealership could be criminally liable for false advertising where he was in a position to control the activities of the dealership and permitted the unlawful practices to continue after being informed of them on numerous occasions.

Although the facts in *Toomey* and *Conway* are more compelling than those alleged here, those cases involved review after evidence had been received. *Toomey* involved review after a hearing for a preliminary injunction at which evidence was received. *Conway* was an appeal after trial. In contrast, we review the sufficiency of the allegations after a demurrer was sustained. Under the standard of review, we must liberally construe the allegations of the complaint with a view to attaining substantial justice among the parties. (*Yue v. City of Auburn* (1992) 3 Cal.App.4th 751, 757.) Under that standard, we find that although some allegations state nothing more than the normal relationship an officer might have with his company, other allegations, construed liberally, show that Krantz and Denny personally participated in the conduct underlying the UCL claims.

According to the second amended complaint, Krantz is one of two shareholders in and president of Mediacom.[24] He scouted sites for the signs on behalf of Rush and Mediacom; he was personally involved in negotiating agreements concerning those signs;

---

[24]    Krantz formed World Wide Mediacom for the purpose of providing "wallscapes." Mediacom Inc. is a member and manager of World Wide Mediacom.

he signed the agreements; he was the initial agent for service of process for Medicacom; and he authorized and ratified the decisions and actions of other defendants that resulted in the illegal advertising displays. He received 25 percent of profits of World Wide Mediacom "or some portion thereof." Beginning in or about August 2007, Krantz exchanged e-mails and had conversations about placing supergraphic signs at 3415 South Sepulveda Boulevard, knowing that the requisite permits, inspections, and approvals were lacking. In or about July 21, 2009, Krantz caused Graphic and Denny to erect unpermitted, uninspected and prohibited supergraphic, off-site sign at 1818 Oak Street, a few feet from the Santa Monica Freeway. On or about March 31, 2010, Krantz e-mailed one of the owners of 8200 Wilshire Boulevard, specifying the gross revenue the owners could expect to receive under different scenarios from the illegal signs on their buildings.

As to Denny, the complaint alleges he owns and is the president of Graphics, which constructs, installs, maintains, repairs, replaces and removes supergraphic and off-site signs throughout the City. Denny personally supervised the construction and installation of supergraphic signs. He negotiated contracts with the Sign Company defendants concerning the illegal signs; assembled, trained, and dispatched work crews to work on the signs; and personally supervised work involving the signs.

On or about December 27, 2008 Denny and Graphic installed "230 of 324 eyebolts on, and erected and secured the sign material" to 10801 National Boulevard, without obtaining a building permit. On or about February 15, 2009, Denny committed perjury by submitting a declaration in federal court making a false statement that work at 10801 National Boulevard was "substantially completed" when it was not. On or about June 7, 2009, Denny continued to work on an illegal supergraphic sign at 4605 North Lankershim Boulevard after the Los Angeles Department of Building and Safety served an order directing all work to stop and to remove the sign.

Liberally construed, the complaint alleges that Denny and Krantz personally directed work on advertising displays to continue, although they knew that the displays were not properly permitted or otherwise violated the law. In furtherance of an illegal scheme, Denny submitted a declaration in federal court stating that work at 10801

21

National was substantially complete when it was not, and he continued to work on a supergraphic sign at 4605 North Lankershim after a stop-work order had been issued. These allegations are sufficient to withstand demurrers.

## DISPOSITION

The judgment is reversed and remanded with directions to the trial court to vacate its order sustaining the demurrer to the first, second, eighth, and ninth causes of action and to enter a new order overruling the demurrer to those counts as to these defendants. Appellants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

22