Filed 5/9/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DORIS CHARLES et al., | B275295 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC576061) |
| SUTTER HOME WINERY, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed.

Kabateck Brown Kellner, Brian S. Kabateck and Drew R. Ferrandini; Esner, Chang & Boyer and Stuart B. Esner for Plaintiffs and Appellants.

Jones Day, Frederick McKnight, Charles H. Moellenberg, Jr., and Kerry C. Fowler for Defendants and Respondents Sutter Home Winery, Inc.; Rebel Wine Co., LLC; Don Sebastiani & Sons International Wine Negociants, Corp.; Jean-Claude Boisset Wines, USA, Inc.; and Raymond Vineyard and Cellar, Inc.

Farella Braun + Martel, R. Christopher Locke and C. Brandon Wisoff for Defendants and Respondents Treasury Wine

Estates Americas Company; Treasury Wine Estates Holding, Inc.; Beringer Vineyards; The Wine Group, Inc.; The Wine Group, LLC; Golden State Vintners; Varni Brothers Corporation; Fetzer Vineyards; and Bronco Wine Company.

O'Melveny & Myers, Dawn Sestito and Guianna Henriquez for Defendant and Respondent Trader Joe's Company.

Nixon Peabody and Bruce E. Copeland for Defendant and Respondent Constellation Brands U.S. Operations, Inc.

Morrison & Foerster LLP and James M. Schurz for Defendant and Respondent California Natural Products.

Larson O'Brien, Robert C. O'Brien, Steven E. Bledsoe and Steven A. Haskins for Defendant and Respondent F. Korbel & Bros.

Maranga Morgenstern, Ninos Saroukhanioff and Robert A. Morgenstern for Defendants and Respondents Megan Mason, Randy Mason and Oakville Winery Management Corp.

Winston & Strawn, Erin R. Ranahan and Drew A. Robertson for Defendants and Respondents Sonoma Wine Co., LLC; and Winery Exchange, Inc.

─────────────────────

Plaintiffs appeal from the judgment of dismissal based on the sustaining of a demurrer to their putative class action complaint under the California Safe Drinking Water and Toxic Enforcement Act of 1986. (Health & Saf. Code, § 25249.5 et seq. (Proposition 65 or the Act).) This appeal challenges the Proposition 65 warning provided by defendants for wines that contain purportedly unsafe levels of inorganic arsenic, a chemical

2

identified by the State of California as a carcinogen and reproductive toxicant (listed chemical).

It is undisputed that defendants provided the so-called "safe harbor" warning for alcoholic beverages: "WARNING: Drinking Distilled Spirits, Beer, Coolers, Wine and Other Alcoholic Beverages May Increase Cancer Risk, and, During Pregnancy, Can Cause Birth Defects." (Cal. Code Regs., tit. 27, § 25603.3, subd. (e)(1);[1] see *Ingredient Communication Council, Inc. v. Lungren* (1992) 2 Cal.App.4th 1480, 1485 [describing "safe harbor" warnings].) Plaintiffs do not take issue with the adequacy of the safe harbor warning for alcoholic beverages as applied to the health risks posed by alcohol. Instead, their concern is with the lack of reference in that warning to inorganic arsenic, a listed chemical, and the increased health risks associated with that toxic substance. Plaintiffs contend defendants were required to provide an additional warning for inorganic arsenic, patterned after section 25603.2, which they claim is stronger than the alcoholic beverage warning. As pertinent, it reads: "WARNING: This product contains . . . chemical[s] known to the State of California to cause cancer [and birth defects, or other reproductive harm]."

In sustaining the demurrer, the trial court reasoned that disclosure of chemical ingredients in alcoholic beverages is not a requirement of the Act, and compliance with Proposition 65 is established as a matter of law where, as here, it is undisputed that the safe harbor warning for alcoholic beverages was provided to consumers of defendants' wines. (§ 25603.3, subd. (e)(1).) We conclude the demurrer was properly sustained on this and other

_____

[1] All further undesignated regulation section references are to Title 27 of the California Code of Regulations.

grounds, including res judicata. The drafting of safe harbor warnings is a regulatory function assigned to the lead agency, the Office of Environmental Health Hazard Assessment (OEHHA), and "[a]ny dissatisfaction with the adequacy of such a warning is a matter for consideration by OEHHA and the Legislature, rather than the court." (*Environmental Law Foundation v. Wykle Research, Inc.* (2005) 134 Cal.App.4th 60, 68, fn. 8 (*Environmental Law Foundation*).)

## FACTUAL AND PROCEDURAL BACKGROUND

Acting in their personal and representative capacities, plaintiffs Doris Charles, Alvin Jones, Jason Peltier, and Jennifer Peltier sued the defendant manufacturers, distributors, and retailers of "arsenic-contaminated wines." The defendants are: Sutter Home Winery, Inc.; Rebel Wine Co., LLC; Don Sebastiani & Sons International Wine Negociants, Corp.; Jean-Claude Boisset Wines, USA, Inc.; Raymond Vineyard and Cellar, Inc.; Treasury Wine Estates Americas Company; Treasury Wine Estates Holding, Inc.; Beringer Vineyards; The Wine Group, Inc.; The Wine Group, LLC; Golden State Vintners; Varni Brothers Corporation; Fetzer Vineyards; Bronco Wine Company; Trader Joe's Company; Constellation Brands U.S. Operations, Inc.; California Natural Products (named as Constellation Wines, US and Simply Naked Winery); F. Korbel & Bros.; Megan Mason and Randy Mason; Oakville Winery Management Corp.; Sonoma Wine Co., LLC; and Winery Exchange, Inc.

Many of the defendants were parties to the consent judgment in a previous Proposition 65 class action lawsuit, *Bonilla v. Anheuser-Busch* (Super. Ct. L.A. County, 2014, No.

4

BC537188) (*Bonilla*).[2]  Because res judicata is an issue on appeal, we begin with discussion of the *Bonilla* case.

*The Bonilla Case*

In *Bonilla,* plaintiffs John Bonilla, Rafael Delgado, Jr., Jesse Garrett, and Rachel Padilla filed a Proposition 65 class action complaint on behalf of themselves and all similarly situated California consumers of alcoholic beverage products manufactured, distributed, and sold by defendants Anheuser-Busch, LLC, Bacardi U.S.A., Inc., Constellation Brands, Inc., Diageo North America, Inc., Hangar 24 Craft Brewery, LLC, Heineken USA Incorporated, and others.  Their complaint alleged the defendants failed to warn consumers that their alcoholic beverage products contained "chemicals" known to the state to cause cancer and reproductive harm.

OEHHA provides a safe harbor warning that the alcoholic beverage industry may provide in order to comply with the Act: "WARNING:  Drinking Distilled Spirits, Beer, Coolers, Wine and Other Alcoholic Beverages May Increase Cancer Risk, and, During Pregnancy, Can Cause Birth Defects."  (§ 25603.3, subd. (e)(1).)  This warning is central to the 2014 consent judgment in

---

[2] Defendants requested that judicial notice be taken of relevant court documents from the *Bonilla* case.  The request is granted. (Evid. Code, § 452, subd. (d).)  All defendants in this case except the following are signatories to the *Bonilla* consent judgment:  Megan Mason, Randy Mason, Oakville Winery Management Corporation, Winery Exchange, Inc., Sonoma Wine Company, LLC, and Golden State Vintners.  Although not a signatory, Trader Joe's is covered by the *Bonilla* consent judgment as a distributor and retailer of wines produced by Bronco Wine Company.

the *Bonilla* case that was signed by many defendants in this case as "opt in defendants." The *Bonilla* defendants and opt-in defendants (jointly, the Releasees) stipulated to the following terms:

- The Releasees agreed to provide the safe harbor warning for alcoholic beverages. (§ 25603.3, sub. (e)(1).)
- Acting in the public interest, the *Bonilla* plaintiffs agreed that the consent judgment would constitute a full, final, and binding resolution "of any violation of Proposition 65 that has been or could have been asserted in the public interest against the Releasees arising out of exposure to the Covered Products."
- The *Bonilla* consent judgment defined "Covered Products" to mean "alcohol beverage products that expose consumers in the State of California to chemicals listed by the State of California pursuant to California Health & Safety Code [section] 25249.8, including 'alcoholic beverages, when associated with alcohol abuse[,]' 'ethyl alcohol in alcoholic beverages,' and 'ethanol in alcoholic beverages. . . .'"

*This Action*

Plaintiffs initiated this action in March 2015, several months after the *Bonilla* consent judgment was entered. The parties do not dispute that Proposition 65 applies to the wines at issue in this case, and defendants do not seek an exemption from the warning requirement.

The Original Complaint. The original complaint alleges that by failing to warn consumers of excessive levels of inorganic

arsenic in their wines, defendants are "poisoning wine consumers in direct violation of California law." However, there is no allegation of personal injury or physical harm resulting from the consumption of inorganic arsenic in the subject wines.

Proposition 65 is mentioned only once in the original complaint, as the basis of the Unfair Competition Law claim. (Bus. & Prof. Code, § 17200 et seq. (UCL).) That claim alleges the failure to provide a Proposition 65 warning for exposure to inorganic arsenic constitutes misleading and deceptive advertising. This theory is the basis of the statutory claims for violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq. (CLRA)) and False Advertising Law (Bus. & Prof. Code, § 17500 (FAL)), as well as claims for unjust enrichment, breach of the implied warranty of merchantability, and negligent misrepresentation.

The complaint seeks injunctive relief and restitution of the purchase price paid for the arsenic-tainted wines from January 1, 2011 to the present. It reserves the right to amend the CLRA claim to seek monetary damages after notice is provided under Civil Code section 1782.

Operative First Amended Complaint. On the same date the original complaint was filed, plaintiffs mailed a 60-day Notice of Violation of Proposition 65 to defendants and the requisite government agencies. (See Health & Saf. Code, § 25249.7, subd. (d)(1).) This notice was based on defendants' alleged failure to warn consumers of exposure to excessive levels of inorganic arsenic in the subject wines. Inorganic arsenic compounds is listed as a carcinogen, and arsenic (inorganic oxides) is listed as a reproductive toxicant on the State Internet site for Proposition 65.

7

(<https://www.p65warnings.ca.gov/fact-sheets/arsenic-inorganic>[as of May 2, 2018].)

Following expiration of the 60-day notice period, plaintiffs filed the first amended complaint, the operative pleading, which alleges a new claim for violation of Proposition 65. The remaining causes of action in the amended complaint are similar to those of the original complaint.

The amended complaint refers to the "no significant risk level" for exposure to inorganic arsenic. This is the level of exposure that OEHHA has determined will pose no significant risk of cancer, and for inorganic arsenic (except through inhalation) it is 10 micrograms per day. (Citing § 25709, subd. (b).) In anticipation of a defense to the warning requirement based on the "no significant risk" level, plaintiffs allege that a Proposition 65 warning must be given whenever the toxic chemical is "added" to a food or beverage. Based on information and belief, plaintiffs allege that because inorganic arsenic is added to the wines in order "to filter, clarify, fine, sweeten, color, stabilize or otherwise manipulate the wine product before sale," there is no exception to the warning requirement.

*Demurrer to First Amended Complaint*

In their demurrer to the amended complaint, defendants argue that arsenic is ubiquitous in air, soil, and water, and appears in trace amounts in wine, beer, tea, fruits, rice, vegetables, and grains. They contend there is no federal or state maximum acceptable daily exposure level for inorganic arsenic in wine, and that by providing the safe harbor warning for alcoholic beverages, they are in full compliance with Proposition 65.

In addition to the *Bonilla* court documents, defendants seek judicial notice of various OEHHA regulations and Statements of Reasons pertaining to Proposition 65 and safe harbor warnings. Defendants also seek judicial notice of the maximum acceptable daily exposure levels for arsenic in wine that have been established by Canada (100 ppb [100 micrograms (µg) of arsenic per liter of wine]), and 46 foreign countries that are members of the International Organization of Vine and Wine (OIV) (200 ppb [200 µg of arsenic per liter of wine]). These requests, which are not opposed, are granted.

Defendants assert the "no significant risk level" of exposure claim is irrelevant to this case because they concede the wines are subject to the Proposition 65 warning requirement, and do not claim an exception to the warning requirement for chemicals that are naturally occurring in food (§ 25501, subd. (a)) or introduced through human activity (§ 25501, subd. (a)(3)). (See Health & Saf. Code, § 109935 ["food" includes "beverages"]; see also *People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1554 [exception for methylmercury that is naturally occurring in tuna].)

Defendants take issue with the allegation that a separate arsenic warning must be given for wines that contain more than 10 micrograms of inorganic arsenic per liter. They contend the complaint conflates the "no significant risk level" of 10 micrograms per day with a maximum daily exposure level for inorganic arsenic in wine, and that 10 micrograms per liter is the maximum acceptable daily limit for exposure to inorganic arsenic in drinking water, not wine. The parties have cited no federal or state regulation that established a maximum daily exposure level

9

for inorganic arsenic in wine.  Nor have we found any such decision.

Applying the drinking water standard to wine would be inappropriate, defendants contend, because it "is based upon a person drinking two liters of water a day every day for a lifetime" (citing 66 C.F.R. § 7006 (2001)).  "For the drinking water standard to be comparable to wine, a person would first need to drink 13.5 glasses of wine—nearly three bottles—every day since birth," and, they claim, it would be wrong to apply the same level of consumption to alcoholic beverages.  They argue it is neither typical nor reasonable to consume 13.5 glasses of wine each day for a lifetime.

Defendants also contend the drinking water standard of 10 micrograms of arsenic per liter of water is stricter than any known standard for inorganic arsenic in wine, which in Canada is 100 micrograms of arsenic per liter of wine, and in 46 other countries is 200 micrograms of arsenic per liter of wine.  Even applying the drinking water standard to wine, the allegation that wines contain inorganic arsenic at levels that are 500 percent or more than the drinking water standard means that the concentration of inorganic arsenic in wine is 50 micrograms of arsenic per liter of wine (500% of 10 µg per liter = 50 µg per liter).  Because the alleged arsenic level is below even the strictest standard for inorganic arsenic in wine, none of the wines at issue in this case would exceed the permissible limit for inorganic arsenic in wine in the 47 countries that have adopted such standard.  Defendants argue that setting a state maximum acceptable daily exposure limit for inorganic arsenic in wine is a regulatory function that requires a balancing of complex policy issues that only the Legislature or OEHHA is qualified to

10

perform. (See, e.g., §§ 25721 [calculating level exposure to chemicals causing cancer], 25821 [calculating level of exposure to chemicals causing reproductive toxicity].)

Defendants also argue that the omission of chemical references does not render a Proposition 65 warning deficient. (Citing *Environmental Law Foundation*, *supra*, 134 Cal.App.4th at p. 69, fn. 10 ["fact that the warning language does not specifically indicate that it is referring to a risk created by . . . mercury, however, is not in itself a deficiency under the regulations to Proposition 65"].) In drafting the safe harbor warnings, OEHHA considered and rejected a recommendation that the warning provide the names of specific chemicals contained in the product. Defendants quote from OEHHA's Revised Statement of Final Reasons: "One commentator recommended that the warning specify the chemicals involved by name. . . . The Agency believes that this would provide little benefit to consumers and might greatly complicate the warning process. Chemical names would probably hold little meaning for the ordinary individual. Placing the names in the warning would mean that separate warning placards might need to be obtained for each product. The goal of the prescribed warnings is to effectively place persons on notice that a risk of cancer or reproductive toxicity is associated with the use of the product. Once on notice, if the person desires additional information, he or she can direct further inquiries to the party giving the warning."

Defendants assert that their compliance with all federal and state labeling and warning regulations for alcohol is undisputed in the complaint. They contend their compliance with these regulations forecloses plaintiffs' claims for additional disclosures.

11

They also argue the *Bonilla* consent judgment bars this subsequent action against the Releasees for "any violation of Proposition 65 that . . . could have been asserted in the public interest against the Releasees arising out of exposure to the Covered Products." They also contend the term "Covered Products" as defined in the consent judgment includes alcoholic beverage products that expose consumers to listed "chemicals," that inorganic arsenic is listed by the state as both a carcinogen and reproductive toxicant, and because the claims in this case arise from alleged exposure to inorganic arsenic in wine, they are barred under the doctrine of res judicata.

Defendants argue the remaining causes of action are derivative of the Proposition 65 claim and must be dismissed. Defendants also contend that the remaining claims are based on a theory of misrepresentation by omission—that by not listing inorganic arsenic in the safe harbor warning, defendants misled consumers into believing their only chemical exposure was to alcohol, and that because there is no duty or obligation to disclose the "trace arsenic content of their wines," the complaint fails to state a viable theory of misrepresentation by omission or concealment.

In opposition to the demurrer, plaintiffs argue the safe harbor warning for alcoholic beverages fails to provide a defense to the complaint because the warning refers only to alcohol and is silent about the presence of inorganic arsenic, which is unsafe in any amount. Consumers are aware that wine contains alcohol, but the same is not true of inorganic arsenic. Accordingly, they argue that a separate Proposition 65 warning for inorganic arsenic is necessary to allow consumers to make an "informed

12

decision about whether or not to be exposed to inorganic arsenic (e.g., whether they want to be poisoned)."

The trial court sustained the demurrer. Reasoning that the safe harbor warning for alcoholic beverages is deemed clear and reasonable by the OEHHA, the trial court concluded no additional warning is required.

At the demurrer hearing, the trial court assumed, as do we, that the subject wines contain alcohol, which is listed by the state as a chemical known to cause cancer and reproductive harm, plus a second chemical, inorganic arsenic, which also is listed by the state as a carcinogen and reproductive toxicant. The court rejected the allegation that a general warning for listed chemicals other than alcohol is required where the wines contain a second chemical, inorganic arsenic, that is not mentioned in the safe harbor warning for alcoholic beverages. The type of general warning sought by plaintiffs, patterned after the present version of section 25603.2 (operative until Aug. 30, 2018), would read: "WARNING: This product contains . . . chemical[s] known to the State of California to cause cancer [and birth defects, or other reproductive harm]." The trial court determined that Proposition 65 does not require both a general warning and a specific warning for an alcoholic beverage product, and whatever shortcomings exist in the alcoholic beverage warning are for the OEHHA or the Legislature to address. (Citing *Environmental Law Foundation, supra,* 134 Cal.App.4th at p. 69, fn. 8.)

Finding the remaining claims to be derivative of the Proposition 65 claim, the court sustained the demurrer to the entire complaint without leave to amend. The court entered a final order (judgment) of dismissal. This timely appeal followed.

13

## DISCUSSION

"'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999.)

### I

On November 4, 1986, the California electorate approved Proposition 65. The Act "prohibits any person, in the course of doing business, from knowingly and intentionally exposing any individual to a chemical known to the state to cause cancer or reproductive toxicity without giving a specified warning . . . . ([Health & Saf. Code,] § 25249.5 et seq.)" (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 969–970.)

### A. The Proposition 65 Warning Requirement

The Act requires each person who, in the course of doing business, knowingly and intentionally exposes another person to a listed chemical, to provide a clear and reasonable warning prior

14

to the exposure.  (Health & Saf. Code, § 25249.6.)  In the context of consumer products, the Act requires that the warning "clearly communicate that the chemical in question is known to the state to cause cancer, or birth defects or other reproductive harm." (§ 25601.)

The warning may be provided through various methods. (Health & Saf. Code, § 25249.11, subd. (f).)  These include labels, postings of notices, and public announcements, ""*provided that the warning* accomplished *is clear and reasonable*."  [Citation.]' [Citation.]" (*Environmental Law Foundation*, *supra*, 134 Cal.App.4th at p. 64.)

B. *Safe Harbor Warnings*

OEHHA, the lead agency designated to implement the Act, has adopted regulations and safe harbor warnings for the businesses that must comply with Proposition 65.  (Health & Saf. Code, § 25249.12; *Environmental Law Foundation*, *supra*, 134 Cal.App.4th at p. 64.)  For consumer products that contain one or more of the listed chemicals—in this case, we assume at least two listed chemicals, alcohol and inorganic arsenic, were present in the wines—OEHHA has deemed warnings given in accordance with the safe harbor provisions "to be clear and reasonable." (§ 12601, subd. (b); *Environmental Law Foundation*, *supra*, 134 Cal.App.4th at p. 65.)  The purpose of the safe harbor warnings is "'to provide the businesses choosing to use them reasonable certainty that they will not be subjected to an enforcement action over the warning they provide.'  (OEHHA, Rev. Final Statement of Reasons (Oct. 6, 1988) pp. 7–8; 22 Cal. Code Regs., Div. 2, § 12601, Clear and Reasonable Warnings.)" (*Environmental Law Foundation*, at p. 67.)  When a safe harbor warning is given in compliance with the requirements of the Act, OEHHA has

15

concluded that the warning eliminates the need for a "'case-by-case factual determination'" of the sufficiency of the warning. (*Id.* at p. 66.)

Alcoholic Beverage Warning. For alcoholic beverages, the state has identified three Proposition 65 chemicals, which are commonly referred to as "alcohol": (1) "ethyl alcohol in alcoholic beverages" was listed as a reproductive toxicant in 1987; (2) "alcoholic beverages, when associated with alcohol abuse" was listed as a carcinogen in 1988; and (3) "ethanol in alcoholic beverages" was listed as a carcinogen in 2011. (See § 27001, subd. (b); Dec. 29, 2017 Proposition 65 List at <https://oehha.ca.gov/proposition-65/proposition-65-list> [as of May 2, 2018].) Following the listing of ethyl alcohol in alcoholic beverages as a reproductive toxicant, OEHHA provided the original safe harbor warning for alcoholic beverages, which read: "WARNING: Drinking Distilled Spirits, Beer, Coolers, Wine and Other Alcoholic Beverages During Pregnancy Can Cause Birth Defects." Subsequently, after "alcoholic beverages, when associated with alcohol abuse" was identified as a carcinogen, OEHHA amended the safe harbor warning to read: "WARNING: Drinking Distilled Spirits, Beer, Coolers, Wine and Other Alcoholic Beverages May Increase Cancer Risk, and, During Pregnancy, Can Cause Birth Defects." (§ 25603.3, subd. (e)(1).)

General Consumer Products Warning. In addition to specialized safe harbor warnings, OEHHA provides safe harbor warnings for exposure to listed chemicals found in general consumer products. This is the additional warning plaintiffs contend is required for wines that contain inorganic arsenic, which is both a carcinogen and a reproductive toxicant.

16

(§ 25603.2.)  OEHHA has determined that for general consumer products:

>    (a) The warning message must include the following language:

>    1.    For consumer products that contain a chemical known to the state to cause cancer:
>    "WARNING:  This product contains a chemical known to the State of California to cause cancer."

>    2.    For consumer products that contain a chemical known to the state to cause reproductive toxicity:
>    "WARNING:  This product contains a chemical known to the State of California to cause birth defects or other reproductive harm."  (§ 25603.2.)

New Warning for Alcoholic Beverages.  The most recent amendments to OEHHA's safe harbor warnings will take effect in August 2018.  For consumer products manufactured prior to August 31, 2018, which includes the wines at issue in this case, the OEHHA has determined that a warning "is deemed to be clear and reasonable if it complies with the September 2008 revision of this article" (referring to art. 6 of tit. 27 of the Cal. Code of Regs.).  (§ 25600, subd. (a), operative Aug. 30, 2018.)

For alcoholic beverages, the new safe harbor warning remains largely unchanged:  "'WARNING: Drinking distilled spirits, beer, coolers, wine and other alcoholic beverages may increase cancer risk, and during pregnancy, can cause birth defects.  For more information go to *www.P65Warnings.ca.gov/alcohol*.'"  (§ 25607.4, subd. (a), operative Aug. 30, 2018, italics added.)

17

In its Final Statement of Reasons (Sept. 2, 2016),[3] OEHHA discussed the effect the new alcoholic beverage safe harbor warning will have on the parties to the *Bonilla* consent judgment. It stated that "appropriately 90 percent of all alcoholic beverage products in California" are produced by the Releasees in *Bonilla*. Citing section 25600, subdivision (e) ("A person that is a party to a court-ordered settlement or final judgment establishing a warning method or content is deemed to be providing a 'clear and reasonable' warning for that exposure for purposes of this article, if the warning complies with the order or judgment"), OEHHA approved the continued use of "the warnings described in the Consent Judgment."

As to those who did not participate in the *Bonilla* consent judgment, OEHHA stated they may use the "methods and content in Section 25607.2 [content for new food exposure warning operative Aug. 30, 2018] and 25607.3 [methods of transmission for new alcoholic beverage exposure warning operative Aug. 30, 2018], respectively, if they wish to take advantage of the 'safe harbor' under Article 6," or "post any warning that is clear and reasonable, including the one adopted in the [*Bonilla*] court settlement." (OEHHA Final Statement of Reasons (Sept. 2, 2016).)

Under both the current and amended versions, the safe harbor warnings do not require that chemical ingredients be named on or adjacent to the alcoholic beverage product. Presumably OEHHA did not believe it necessary to identify

---

[3] This document can be found online at https://oehha.ca.gov/media/downloads/crnr/art6fsor090116.pdf (as of May 2, 2018).

alcohol in the new safe harbor warning for alcoholic beverages because the presence of alcohol is obvious to consumers.

New Food and Beverage Exposure Warning. For foods that contain one or more listed chemicals, the new safe harbor warnings will require, for the first time, the identification of at least one chemical for each applicable health risk—cancer and reproductive harm. Because "beverages" are "foods" (§ 25600.1, subd. (g), effective Aug. 30, 2018, citing Health & Saf. Code, § 109935, subd. (a)), this new safe harbor warning also applies to beverages, and, at the election of the entity providing the warning, may be used for alcoholic beverages. (OEHHA Final Statement of Reasons, Sept. 2, 2016.)

For foods and beverages that expose consumers to *both* carcinogens and reproductive toxicants, the new safe harbor warning provides: "Consuming this product can expose you to chemicals including [name of one or more chemicals], which is [are] known to the State of California to cause cancer and [name of one or more chemicals], which is [are] known to the State of California to cause birth defects or other reproductive harm. For more information go to www.P65Warnings.ca.gov/food." (§ 25607.2, subd. (a)(4), operative August 30, 2018.)

For foods and beverages that expose consumers to a *single* chemical that is both a carcinogen and reproductive toxicant, the new safe harbor warning provides: "For exposure to a chemical that is listed as both a carcinogen and a reproductive toxicant, the words, 'Consuming this product can expose you to chemicals including [name of one or more chemicals], which is [are] known to the State of California to cause cancer and birth defects or other reproductive harm. For more information go to

19

www.P65Warnings.ca.gov.'" (§ 25607.2, subd. (a)(5), operative Aug. 30, 2018.)

"Where a warning is being provided for an exposure to a single chemical the words 'chemicals including' may be deleted from the warning content set out in subsections (2), (3), and (5)." (§ 25607.2, subd. (a)(6).) The new safe harbor warnings for foods and beverages that expose consumers to more than one listed chemical are deemed to be "clear and reasonable" provided at least one of the listed chemicals is disclosed, regardless of the number contained in the product. (See OEHHA Final Statement of Reasons, Sept. 2, 2016.)

## II

Plaintiffs argue that providing the safe harbor warning for general consumer products (§ 25603.2) would result in a "stronger" warning than the alcoholic beverage warning (§ 25603.3). Assuming this is true, the different messages provided in the general warning and the alcoholic beverage warning are based on a balancing of risks, a process that OEHHA is best equipped to determine.

Plaintiffs contend the safe harbor warning for alcoholic beverages is incomplete because it does not alert consumers to the presence of inorganic arsenic, and by this omission, the warning misleads consumers into believing their exposure is limited to a single listed chemical, alcohol. But the purpose of Proposition 65 is to warn consumers of the two health risks—cancer and reproductive harm—associated with exposure to a listed chemical, and the alcoholic beverage warning complies with the regulations drafted by OEHHA to accomplish that objective.

20

Plaintiffs contend that providing a separate warning for inorganic arsenic is required unless the level of exposure falls below the "maximum allowable dose level" (MADL) for arsenic in wine. They assert that the party seeking an exemption from the warning requirement—in this case, defendants—must bear the burden of proof at trial for establishing the MADL for arsenic in wine, and due to the existence of a triable issue of material fact, the demurrer is improper. This assertion overlooks the fact that defendants are not seeking an exemption from the warning requirement. It also ignores the regulatory process that authorizes the lead agency to determine whether, in addition to the alcoholic beverage warning, a separate warning for inorganic arsenic is required.

OEHHA does not require defendants to provide two separate warnings for alcoholic beverages that contain an additional listed chemical. In the new warnings that will take effect on August 30, 2018, OEHHA requires the disclosure of only one listed chemical per health risk and allows each business to decide whether to list additional chemicals in the warning they choose to provide. Under the current regulatory scheme, the failure to provide a separate arsenic warning is not a violation of the regulations or the initiative itself. Whether an additional warning should be required for inorganic arsenic in wine is a matter for the Legislature or OEHHA to consider. (See *Environmental Law Foundation, supra*, 134 Cal.App.4th at p. 68, fn. 8 [adequacy of safe harbor warning for mercury in dental amalgam is matter for OEHHA or Legislature to determine]; see also *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 706–707 [fluoridation of drinking water is legislative function].)

21

III

As to the defendants that participated in the *Bonilla* consent judgment, the demurrer was properly asserted on the ground of res judicata and is affirmed that basis. "'Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by the parties or their privies on the same cause of action.'" (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 575–576 (*Villacres*), quoting *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589–590.)

The second aspect of the res judicata doctrine is collateral estoppel (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299), which precludes litigation of a claim that was related to the subject matter of the first action and could have been raised in that action, even though it was not expressly pleaded. (*Villacres*, *supra*, 189 Cal.App.4th at p. 576, citing *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181–182.) This preclusive effect applies where, as here, the previous action was dismissed with prejudice based on a court-approved class action settlement agreement. (*Villacres*, at p. 577.)

The *Bonilla* consent judgment constitutes a full, final, and binding resolution "of any violation of Proposition 65 that has been or could have been asserted in the public interest against the Releasees arising out of exposure to the Covered Products." "Covered Products" is defined as alcoholic beverage products that expose consumers to listed chemicals, "including 'alcoholic beverages, when associated with alcohol abuse[,]' 'ethyl alcohol in alcoholic beverages,' and 'ethanol in alcoholic beverages.'" Plaintiffs contend the word "including" imposes a limitation that excludes non-enumerated chemicals such as inorganic arsenic from the scope of the consent judgment. We do not agree. In our

view, the word "including" does not denote exclusivity. (See *Hasson v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 ["the word 'including' in a statute is 'ordinarily a term of enlargement rather than limitation'"].) As we read the *Bonilla* consent judgment, any claims that could have been asserted in that case are included in the scope of the consent judgment and may not be raised in a subsequent action. Because the present claim is based on a violation of Proposition 65 arising out of exposure to a listed chemical in a Covered Product, it qualifies as a claim that could have been asserted in *Bonilla* and therefore is barred by the consent judgment.

Plaintiffs argue that *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675 (*Consumer Advocacy*) precludes the res judicata defense. We disagree. *Consumer Advocacy* was preceded by a settlement agreement and stipulated judgment in another action between the same parties (the "CBE" action). (*Id.* at p. 681.) That agreement contained a provision that expressly released all claims that could have been raised arising out of any alleged discharge of or exposure to two specific chemicals, benzene and toluene. (*Id.* at p. 688.) Lead, the chemical at issue in the subsequent *Consumer Advocacy* action, was not mentioned in the previous settlement agreement, either by name or more generally as a "gasoline constituent." (*Ibid.*) Accordingly, *Consumer Advocacy* held that the release in the CBE action did not bar a subsequent action concerning discharge of or exposure to lead. (*Id.* at p. 689 ["While ExxonMobil is not entitled to full summary judgment or to summary adjudication that CAG's entire action is barred by res judicata, this is only because the CBE action did not resolve claims relating to lead."].) Here, the *Bonilla* consent judgment

23

included a release of future claims based on exposure to a listed chemical in a Covered Product.  Because this case falls within the terms of that release, it is barred by the previous consent judgment.

In plaintiffs' view, resolution of this issue on demurrer is improper because extrinsic evidence will be admissible at trial to interpret the consent judgment and settlement agreement in *Bonilla*.  But extrinsic evidence is not admissible to provide a "'meaning to which [an instrument] is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect.' [Citations.]" (*G & W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 576 (*G & W*); see *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*. (1968) 69 Cal.2d 33, 37 [admissibility of extrinsic evidence to explain contract based not on whether contract language is clear on its face, but on whether it "'is relevant to prove a meaning to which the language of the instrument is reasonably susceptible'"].)  Evidence of the undisclosed intent or understanding of the parties is not relevant to contract interpretation where, as here, the language of the consent judgment and settlement agreement are susceptible to only one reasonable interpretation.  (*G & W*, at pp. 574–575.)

Finally, the public policy argument raised by plaintiffs does not require a different result.  The consent judgment in *Bonilla* was governed by the 2001 amendments to Proposition 65 that were adopted to address the concern that "allowing a settlement by one private enforcer to preclude claims by a different private enforcer will encourage collusive settlements." (*Consumer Advocacy*, *supra*, 168 Cal.App.4th at p. 685.)  "In response to this concern, the Legislature did not strip Proposition 65 settlements of preclusive effect, but instead increased oversight of settlements

24

involving private enforcers.  The 2001 amendments included the addition of section 25249.7, subdivision (f)(4), which mandates court review and factual findings before approval of any settlement in a private enforcement action, and subdivision (f)(5), which requires that these settlements be submitted to the Attorney General, who may then participate in the settlement approval process.  (Legis. Counsel's Dig., Sen. Bill No. 471 (2001–2002 Reg. Sess.) Stats. 2001, ch. 578.)"  (*Id.* at p. 685, fn. omitted.)  The *Bonilla* court documents indicate the Attorney General reviewed the settlement agreement.  If the public interest is not sufficiently protected, the Attorney General may appeal from a consent judgment in a Proposition 65 private enforcement action.  (See *Consumer Defense Group v. Rental Housing Industry Members* (2006) 137 Cal.App.4th 1185, 1204–1205.)

 *Richards v. Jefferson County*, *Ala.* (1996) 517 U.S. 793, cited by plaintiffs, is distinguishable.  *Richards* involved a class-action complaint filed by Jason Richards and Fannie Hill to invalidate a county tax that had been upheld in an earlier action, *Bedingfield v. Jefferson County* (1988) 527 So.2d 1270.  The previous action was brought by three taxpayers (*Bedingfield* plaintiffs) who did not sue on behalf of a class.  (*Richards*, at p. 801.)  The judgment the *Bedingfield* plaintiffs received did not purport to bind any county taxpayers who were nonparties, such as Richards and Hill.  (*Id.* at pp. 801–802.)  In concluding the judgment in *Bedingfield* was not binding on Richards and Hill, the Supreme Court stated:  "[T]here is no reason to suppose that the *Bedingfield* court took care to protect the interests of [Richards and Hill] . . . [or] that the individual taxpayers in *Bedingfield* understood their suit to be on behalf of absent county

taxpayers.  Thus, to contend that the plaintiffs in *Bedingfield* somehow represented [Richards and Hill], let alone represented them in a constitutionally adequate manner, would be 'to attribute to them a power that it cannot be said that they had assumed to exercise.' [Citation.]" (*Id.* at p. 802.)

IV

Plaintiffs contend they are entitled to amend their complaint.  Plaintiffs have not alleged a viable theory for imposition of a duty to provide two warnings, one for inorganic arsenic and another for alcoholic beverages.

The non-Proposition 65 claims are based on a common theory of misrepresentation by omission.  The underlying premise is that the warning provided by defendants—the safe harbor warning for alcoholic beverages—is deceptive and misleading to consumers because it fails to disclose the presence of a second listed chemical, inorganic arsenic, in the subject wines.  But this theory is flawed for the reasons previously discussed.

Where, as here, the UCL claim is based on an invalid Proposition 65 claim, dismissal is proper.  (Cf. *In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 458–459 [plaintiff may not bring UCL claim based on violation of Proposition 65 that is barred for lack of compliance with 60-day notice requirement].)  The same is true of the CLRA claim, which is indistinguishable from the UCL claim given the absence of a claim for monetary damages.  Although plaintiffs reserve the right to seek monetary damages under the CLRA, they have not provided statutory notice under Civil Code section 1782 despite the opportunity to do so.  (See *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1259–1261 [failure to comply with notice requirement precludes monetary damages under CLRA];)  This indicates the

principal relief sought under the CLRA claim is restitution and injunctive relief, and because such relief is precluded by the failure to allege a viable Proposition 65 claim, dismissal is proper. (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 543 [nuisance cause of action was merely clone of invalid cause of action for negligence, and thus falls with that cause of action].)

The same is true of the FAL claim and causes of action for unjust enrichment, breach of the implied warranty of merchantability, and negligent misrepresentation. Because they are based on the identical theory—that the safe harbor warning for alcoholic beverages is deceptive and misleading due to the omission of any reference to inorganic arsenic—leave to amend was properly denied for the reasons already stated.

The final contention—that plaintiffs have alleged a separate violation of consumer protection laws based on the addition of inorganic arsenic to wine—does not compel a different result. Although the complaint mentions arsenic poisoning in a conclusory fashion, the primary right alleged in the pleading is the right of consumers to receive a separate Proposition 65 warning for inorganic arsenic in wine. There is no allegation of personal injury or death caused by the unknowing consumption of inorganic arsenic in the subject wines (cf. *Major v. R.J. Reynolds Tobacco Co.* (2017) 14 Cal.App.5th 1179 [cigarette manufacturer liable in negligence and product liability for smoker's death from lung cancer]), or improper manufacture or sale of adulterated wines (cf. Health & Saf. Code, § 110445 [addition of poisonous or deleterious substance renders food unsafe unless within regulatory limits].) Regardless whether properly pleaded allegations of improper manufacture or sale of

adulterated wines may be raised in another lawsuit, they are not before us now.

To summarize, the implementation of Proposition 65 is assigned to the lead agency, OEHHA, and it has authority to determine the content and manner of displaying safe harbor warnings. Because it is undisputed defendants provided the safe harbor warning for alcoholic beverages, and because OEHHA has deemed this to be a "clear and reasonable" warning, any alleged deficiency in the warning message—that it does not disclose the presence of inorganic arsenic—is not a violation of the regulations. Instead, it "is a matter for consideration by OEHHA and the Legislature, rather than the court." (*Environmental Law Foundation*, *supra*, 134 Cal.App.4th at p. 69, fn. 8.) Under the circumstances in this case, the safe harbor warning for alcoholic beverages provides a complete defense. "[W]here the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 455, 459.)

## DISPOSITION

The judgment (order of dismissal) is affirmed.  Defendants are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION



EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.